[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15701
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 6, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-60114-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LESMARGE VALNOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 6, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Lesmarge Valnor appeals his 28-month sentence, which was imposed after he pled guilty to conspiracy to produce identification documents without lawful authority, in violation of 18 U.S.C. § 1028(f). On appeal, Valnor argues that the

district court imposed an unreasonable sentence, because the district court improvidently applied the factors embodied in Title 18, section 3553(a) of the United States Code, and enhanced his sentence well above the advisory Guidelines range, on grounds of national security. After careful review, we affirm.

I.

These are the relevant facts. On May 28, 2005, Valnor was indicted for conspiracy to produce identification documents without lawful authority, in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A), (c)(3)(A), and (f) (Count 1), and aiding and abetting in the production of an identification document, in violation of 18 U.S.C. §§ 2 and 1028(a)(1) (Count 2). After initially pleading not guilty to the charges, Valnor agreed to plead to Count 1, pursuant to a written plea agreement. As part of the agreement, Valnor agreed to cooperate fully with the government.[1]

---

[1] The plea agreement also contained a general sentence-appeal waiver, whereby Valnor waived his right to appeal the sentence, including on the ground that the district court erred in calculating the Guidelines range, except for a sentence above the statutory maximum or a sentence that "is the result of an upward departure from the guideline range that the court establishes at sentencing." In its brief, the government urges that the district court correctly calculated the Guidelines range and imposed an "upward variance" based on the 18 U.S.C. § 3553(a) factors, rather than an upward departure under the Guidelines. Cf. United States v. Eldick, 443 F.3d 783, 788 n.2 (11th Cir. 2006) (noting that district court's decision to impose sentence above the Guidelines range did not constitute an upward departure, but rather was an exercise of its discretion since (1) "the court did not cite to a specific guidelines departure provision," and (2) the district judge stated that "the guidelines did 'not adequately take into account the severity of the damage done by Mr. Eldick, and, therefore, I find that they should not be applied.'"). However, the government has not filed a motion to dismiss this appeal, nor does it argue that dismissal is warranted because of the waiver. We will address the merits of Valnor's claim, rather than dismissing the appeal based on the waiver, because the appellee does not seek application of the waiver, has already expended the resources to brief the case on the merits, and application of the waiver is not outcome-determinative.

In exchange for Valnor's guilty plea, the government agreed to (1) seek dismissal of Count 2 after sentencing; (2) recommend that Valnor receive a reduction in his offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1; (3) recommend that Valnor be sentenced at the low end of the Guidelines range determined by the court; (4) evaluate whether Valnor provided substantial assistance warranting a motion for downward departure from the advisory Guidelines range pursuant to either U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35; and (5) jointly recommend with Valnor "that the court impose a sentence within the advisory sentencing guideline range . . . [and] except as otherwise expressly contemplated . . . neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case."

According to the presentence investigation report ("PSI"), an investigation by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") revealed evidence of a scheme involving the issuance of fraudulent driver's licenses to illegal immigrants in the South Florida area. The subject fraudulent licenses actually were issued by Derene Fraser, a Florida Department of Motor Vehicles ("DMV") License Examiner who worked in DMV offices in Broward and Miami-Dade Counties from 1999 through November 18, 2003. The

investigation ultimately led to the arrest of several suspects, including the defendant Valnor, Fraser, and Daniel Bharath.

Bharath was arrested on March 30, 2005, after being found in Broward County in possession of a fraudulent commercial driver's license, which had been issued by Fraser on December 4, 2002. Following his arrest, Bharath stated that in late 2002, he had attempted to obtain a driver's license, which he needed to work as a truck driver, but was unsuccessful because he did not have a green card. Bharath subsequently met an individual outside a DMV office near Oakland Park Boulevard in Broward County. Bharath knew the individual as "Lamaz" -- "Lamaz" subsequently was identified as Lesmarge Valnor. Valnor indicated that he could get Bharath a license for $2,000. On a later date, Bharath gave Valnor $2,000 outside of the DMV. Valnor took the money and an expired New York driver's license, issued in Bharath's name, and entered the DMV. Valnor subsequently came back and told Bharath to go inside and wait to be called. Inside the DMV, Fraser issued Bharath his commercial driver's license. About two weeks later, Bharath paid Valnor between $400 and $600 for a fake green card.

On April 7, 2005, ICE special agents arrested Fraser who, at the time of her arrest, provided more information regarding her involvement with Valnor in issuing driver's licenses to individuals who could not legally obtain them. Fraser

4

said that, between about March or April 2003 and October 2003, she issued approximately 30 fraudulent driver's licenses on behalf of an individual she knew as "Lesmarges," later identified as the defendant Valnor.

On April 27, 2005, Valnor was arrested. Following his arrest, Valnor stated that people who needed driver's licenses, but did not have proper immigration documents, would come to him for help. He said that he charged between $400 and $500 per license, and that of this amount, he paid Fraser between $250 and $300. Valnor indicated that there were other people working with Fraser to obtain fraudulent driver's licenses for illegal immigrants. He also admitted that he helped 10 people obtain their licenses illegally through Fraser, and that he knew these people would not be able to obtain a license without his (and Fraser's) assistance. In connection with the preparation of the PSI, and for purposes of accepting responsibility, Valnor subsequently admitted that he helped approximately 15 to 25 people obtain driver's licenses in the above-described manner.

The PSI recommended a base offense level of 11, pursuant to U.S.S.G. § 2L2.1(a), and, based on the government's recommendation and Fraser's post-arrest statement, both of which indicated that Valnor was responsible for approximately 30 fraudulent licenses, a 6-level increase pursuant to § 2L2.1(b)(2)(B). After a 3-level reduction for acceptance of responsibility,

U.S.S.G. § 3E1.1, Valnor's adjusted offense level was 14. With a criminal history category I, Valnor faced an advisory Guidelines sentencing range of 15 to 21 months' imprisonment. The statutory maximum for his offense was 15 years, pursuant to 18 U.S.C. § 1028(b)(1)(A). The PSI noted that because Valnor agreed to cooperate, a substantial-assistance departure would be filed by the government pursuant to U.S.S.G. § 5K1.1.

Prior to the sentencing hearing, Valnor raised one objection to the PSI, arguing that he should have received only a 3-level, rather than 6-level, enhancement under U.S.S.G. § 2L2.1(b)(2), because his offense involved between 15 and 25 documents rather than 30 documents. Valnor subsequently withdrew this objection at the sentencing hearing. Accordingly, at the start of the sentencing hearing, the district court found that "the advisory Guideline range that is applicable is 15 to 21 months."

The government then moved for a downward departure, pursuant to U.S.S.G. § 5K1.1, based on Valnor's substantial assistance, which the government detailed for the court. The government indicated that the "first wave" of the investigation of the South Florida DMV offices led to the arrest of 52 people, including DMV license examiners, middlemen acting as license brokers (such as Valnor), and others who provided additional false documents such as social

6

security cards and Form I-94 immigration documents to illegal aliens.  According to the government, its investigation at the DMV was ongoing and it had uncovered "widespread corruption."

After the government detailed Valnor's cooperation and assistance, the district court addressed defense counsel:

> I know that the advisory Guideline range at this point is 15 to 21 months, but even had you prevailed on your objection [to the 6-level upward adjustment under 2L2.1(b)(2) based on the number of documents attributable to Valnor] the Guideline range would have been 10 to 16 months.  And it is the position of the court that either range, 15 to 21 or 10 to 16, would be wholly inadequate as far as a sentence goes for this type of a crime.
>
> In other words, the court is considering an upward departure because of the type of crime involved, especially since 9/11.  One of the first lines of national defense is identification. . . .  Once a person obtains identification documents, that individual is then able to pass through the gateway of security, if you will, and then into the society.
>
> Once an individual has fake identification, that individual is then able to obtain other documents by use of the fake identification, other documents that the individual would not otherwise be entitled to have.
>
> So I consider this a very, very serious crime, far greater than either Guideline range, 10 to 16 months or 15 to 21, and I want to give you an opportunity to try to persuade me why I should not depart upward.
>
> If you think you need some additional time, if you want the weekend to think about this, I can bring everyone back here next week.  But I leave it up to you as to whether or not you wish to respond at this point in time.

In response, defense counsel argued that Valnor's conduct was distinguishable from the conduct affecting national security discussed by the district court, because Valnor "was assisting people who previously had valid driver's licenses, who were already in the country[, a]nd but for the changes that occurred to the immigration laws subsequent to 9/11 were no longer able to renew their licenses." Valnor admitted, however, that the individuals he had helped obtain driver's licenses were not entitled to get those licenses. Upon further questioning by the district judge, the government described Valnor's primary offense conduct as obtaining license renewals for people who previously had valid licenses, but who could no longer renew those licenses because their immigration status had expired. Thus, it was undisputed that Valnor renewed licenses for people who were not entitled to those renewals.

The district court questioned how Valnor could distinguish between someone who previously was in the country legally and a person who never had a legal basis for being in the United States. The government responded that the only way Valnor would know is if he was presented with a valid, expired driver's license. But even in that case, the district court observed, Valnor had no way of discerning whether a person was legally authorized to be in this country at the time of the illegal and fraudulent license renewal.

Thereafter, the district court commented, "I think this is a very serious offense. I do not diminish it to the extent that [defense counsel] does, and even to the extent that the government does." The court then continued the sentencing hearing in order to "think about everything that has been discussed . . . before I make a decision on this inclination to impose a sentence that would be higher than the high end of the advisory guideline range. That is before we get to the government's [5K1.1] motion, but I have to have a starting point."

At a second sentencing hearing, which was held four days after the first, the district court indicated that it had

> been struggling with this issue of the adequacy, the sufficiency of the advisory guideline range as a sufficient starting point. And I refer to it as a starting point because the government has filed a . . . [5K1.1] motion for a departure. So we've got to have a starting point, and then the Court considers departing from that starting point. And . . . it's that starting point I've been struggling with.

The district judge again continued the sentencing hearing because he was "not yet at a point where [he could] articulate a starting point."

About two weeks later, at the final sentencing hearing, the district judge announced his decision:

> Today, driver's licenses are far more than simply an authorization to operate a motor vehicle. They serve as the primary means of personal identification, particularly in the absence of a national identification card, and are the first line of defense in national security after 9/11. With a driver's license a person is able to access

9

and integrate into society with the ability, among others, to obtain other documents that he or she would otherwise be unable to acquire. In light of our present security situation, it is of paramount importance that the issuance and distribution of state issued driver's licenses be secured.

When individuals such as Mr. Valnor breach that security while lining their pockets, and illegally obtain and distribute driver's licenses to individuals not legally entitled to them, there is cause for great concern for the security of our nation and its citizenry. In light of the egregious nature of the offense, the Court has carefully considered the factors set forth in Title 18 Section 3553(a)(1) through and including (7) of the United States Code in imposing sentence in this case.

The Court finds, as previously stated, that Mr. Valnor's offense is serious, because his actions impact national security by placing this vital piece of identification into the hands of persons whom Congress and the Florida legislature specifically intended to exclude. Indeed, the fact that he only sold the licenses to those who were able to have them before the post September 11 rule changes, but subsequently were not, only goes to show that he was selling these licenses to exactly the people Congress intended to subject to greater regulation for the purpose of our national security.

While the Court recognizes that Mr. Valnor was not working inside the Florida [DMV], the Court finds that he poses a greater [threat] to society than a DMV employee involved in this scheme. Mr. Valnor was intimately . . . involved in the market through which unauthorized individuals obtained driver's licenses. This market is not state regulated, but rather by its very nature operates below the radar of the state and society at large. Therefore, unlike the DMV employee who will never again return to his or her position to commit the same crime, Mr. Valnor as a middleman is free to return to his, quote, market of illegally obtaining and selling driver's licenses validly issued or otherwise.

> Because there are no systematic safeguards to prevent Mr. Valnor from returning to his dangerous position and committing the similar acts, the Court finds that in order to effectuate the aims of [18 U.S.C. §§ 3553(a)(2)(B) and (C)], and thereby afford adequate deterrence and protect the public from further crimes of this nature committed by Mr. Valnor, a sentence above the high end of the advisory guideline range is appropriate and reasonable.
>
> Therefore, the Court departs to forty-two months as the starting point. The Court now considers the government's . . . motion for a downward departure.

Thus, the district court explained, the starting point meant that "absent any motion for a downward departure, I would otherwise impose a sentence of forty-two months."

After hearing from the parties regarding Valnor's cooperation, the court granted the government's motion for downward departure, finding that Valnor had rendered substantial assistance to the United States. The court said that it had reviewed the advisory Guidelines range, as well as the factors contained in 18 U.S.C. § 3553(a), and had "departed above the advisory guideline range for the reasons previously stated," to 42 months, which was "more than reasonable as a starting point for a crime of this seriousness, especially with respect to national security," before deciding to depart downward based on Valnor's substantial assistance. Ultimately, the court sentenced Valnor to a 28-month term of

11

imprisonment followed by two years' supervised release. Valnor then objected to the overall sentence, which the court overruled. This appeal followed.

## II.

After United States v. Booker, 543 U.S. 220 (2005), a district court, in determining a reasonable sentence, must consider the correctly calculated sentencing range under the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). We review a district court's interpretation of the Guidelines de novo and its factual findings for clear error. See United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 126 S. Ct. 812 (2005). "In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Thomas, --- F.3d ---, 2006 WL 1081105, at *1 (11th Cir. Apr. 26, 2006) (citing United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir. 2005) ("We do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness.")).

"Before we conduct a reasonableness review of the ultimate sentence imposed, 'we first determine whether the district court correctly interpreted and applied the Guidelines to calculate the appropriate advisory Guidelines range.'"

12

United States v. McVay, --- F.3d ---, 2006 WL 1193212, at *5 (11th Cir. May 5, 2006) (quoting United States v. Williams, 435 F.3d 1350, 1353 (11th Cir. 2006) (internal citation omitted)).  "It is only after a district court correctly calculates the Guidelines range, which it still must do after Booker, that it may consider imposing a more severe or more lenient sentence."  Id.  "When we review a sentence for reasonableness, we do not, as the district court did, determine the exact sentence to be imposed."  Talley, 431 F.3d at 788.  A "district court may impose a sentence that is either more severe or lenient than the sentence we would have imposed, but that sentence must still be reasonable."  Id.  Our "[r]eview for reasonableness is deferential," and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)."  Id.

Again, Valnor faced a Guidelines sentencing range of 15 to 21 months' imprisonment based on an adjusted base offense level of 14 and a criminal history category I.  After considering and hearing argument on the § 3553(a) factors, the district court concluded that a 15 to 21 months' sentence, as derived from the advisory Guidelines, failed to properly accommodate the statutory goals of sentencing embodied in 18 U.S.C. § 3553(a).  Specifically, the district court was troubled that a 15 to 21 months' sentence would fail to adequately deter or to

13

protect the public from future crimes. Accordingly, the district court settled at a 42-month sentence before considering, and ultimately granting, the government's substantial-assistance motion under § 5K1.1. The district court then imposed an ultimate sentence of 28 months' imprisonment. We consider the reasonableness of that sentence today.[2]

In determining whether a sentence is reasonable, we are guided by the factors as set forth in 18 U.S.C. § 3553(a). Booker, 543 U.S. at 261; Winingear, 422 F.3d at 1246. These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]

(3) the kinds of sentences available[.]

---

[2] In this appeal, Valnor does not challenge the advisory Guidelines range of 15 to 21 months' imprisonment, nor does he suggest that the district court should have considered the government's § 5K1.1 motion based on substantial assistance before applying the § 3553(a) factors. Cf. McVay, 2006 WL 1193212, at *8 (noting that, on remand, "after it has decided the length of departure warranted by the substantial assistance motion, the district court is then obliged to take into account the advisory Guidelines range and the sentencing factors set forth in 18 U.S.C. § 3553(a) in fashioning a reasonable sentence" (emphasis added)). At all events, from our review of the transcripts, we are satisfied the district court's ultimate sentence was reasonable.

18 U.S.C. § 3553(a)(1)-(3). "Although sentencing courts must be guided by these factors, 'nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.'" Thomas, 2006 WL 1081105, at *7 (quoting United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005)); see also United States v. Robles, 408 F.3d 1324, 1328 (11th Cir. 2005) (stating that, post-Booker, district courts need not conduct an accounting of every § 3553(a) factor and expound on how each factor played a role in the sentencing decision).

After a thorough review of the record, with particular attention to the transcripts from Valnor's three sentencing hearings and the PSI, we are satisfied that Valnor's sentence was reasonable. The district court was particularly concerned with the following facts, which were relevant to the § 3553(a) analysis: (1) "the egregious nature of the offense" based on its potential impact on national security; (2) that Valnor's sales of license renewals to those who were able to obtain licenses before the 9/11 rule changes, but subsequently could not get renewals, resulted in the provision of licenses to the very people Congress intended to subject to greater regulation in the name of national security; and (3) that unlike in the case of a DMV employee, who could not return to his or her prior position after conviction, there were no safeguards to prevent middlemen like Valnor from

15

returning to the unregulated market of illegally obtaining and selling driver's licenses. The district court concluded that in order to "afford adequate deterrence and protect the public from further crimes of this nature committed by Mr. Valnor, a sentence above the high end of the advisory guideline range is appropriate and reasonable."

Thus, in imposing sentence, the district court expressly stated that it had considered "the serious nature of the offenses committed by this defendant." See 18 U.S.C. § 3553(a)(2) (discussing factors pertaining to "the need for the sentence imposed," including "the seriousness of the offense"). Moreover, "[t]he parties' arguments and the PSI's calculations outlined 'the kinds of sentences available.'" Thomas, 2006 WL 1081105, at *7 (quoting 18 U.S.C. § 3553(a)(3)). And as we have noted above, the district court considered at length that a middleman like Valnor could "return[ ] to his dangerous position and commit[ ] . . . similar acts." See § 18 U.S.C. § 3553(a)(2) (discussing factors pertaining to need for sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant"). Finally, Valnor faced a 180-month statutory maximum term pursuant to 18 U.S.C. § 1028(b)(1)(A). Both the 42-month sentence the district court

16

reached after considering the § 3553(a) factors and the ultimate sentence were appreciably below the length of the statutory maximum.

Although Valnor disagrees with the district court's assessment of several of the § 3553(a) factors, on this record, we cannot say that the district court's careful consideration of the § 3553(a) factors, as they pertained to Valnor's sentencing calculus, was unreasonable. The district court properly fulfilled its role in considering the Guidelines, but found the Guidelines range to be inadequate to accomplish the statutory goals of providing adequate deterrence and protecting the public from further crimes. Accordingly, we conclude that the district court's 28-month sentence was reasonable.

**AFFIRMED.**