[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15533
Non-Argument Calendar

_____

D. C. Docket No. 05-00135-CR-CLS-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEANDRA MARTEZ SQUARE,
a.k.a. Deandre Square,
a.k.a. De'Andre Square,
a.k.a. Deandra Carter,
a.k.a. Dre,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 1, 2006)

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Deandra Martez Square appeals his 51-month sentence for violations of the Controlled Substance Registrant Protection Act ("CSRPA"), 18 U.S.C. § 2118, imposed as part of a total 291-month sentence for robbing a pharmacy, in connection with which he had also pled guilty to using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). Because Square's sentence was reasonable, considering the factors listed in 18 U.S.C. § 3553(a), especially the need for the sentence to reflect the seriousness of the offense, the district court did not err by varying the sentence upward from the correctly calculated Sentencing Guidelines range, and we AFFIRM.

## I. BACKGROUND

Square pled guilty, pursuant to a negotiated plea agreement, to: (1) conspiracy to violate the CSRPA, 18 U.S.C. § 2118(d) (Count 1); (2) violation of the CSRPA, 18 U.S.C. § 2118(a),(c)(1) (Count 2); and (3) use of a firearm during a crime of violence, 18 U.S.C. § 924(c) (Count 3). According to the plea agreement, Square and two codefendants robbed a pharmacy, and, when a police officer attempted to stop the robbery, Square and one codefendant fired multiple shots at the officer and fled. R1-26 at 3-4. Authorities later recovered "almost 40 spent shells" from the scene. Id. at 4. Although Square generally waived the right to

2

appeal his sentence, he reserved the right to appeal a sentence constituting an upward departure from the Guidelines range.

The probation officer set Square's base offense level for Counts 1 and 2 at 20, pursuant to U.S.S.G. § 2B3.1(a)(2004). This was enhanced by one level, pursuant to § 2B3.1(b)(6), because the crime involved the theft of controlled substances. The base offense level was also increased by one, pursuant to § 2B1.3(b)(7)(B), because the related loss exceeded $10,000. Finally, it was increased by two levels because Square's shooting at the police officer "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Square received a three-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of 21. With a criminal history category of I, his guideline sentencing range was 37 to 46 months as to Counts 1 and 2. The guideline sentence for Count 3 was the statutory minimum, which, here, was a ten-year sentence to be served consecutively with sentences on other counts.[1] See U.S.S.G. § 2K2.4(b).

---

[1]Despite this guideline sentence, the district court, explaining that Square would receive the same sentence for Count 3 as his codefendant, sentenced Square to 240 months as to Count 3. See R3 at 15. Square did not object to the sentence, either at the sentencing hearing or on appeal, and, therefore, has waived any argument concerning this issue. See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam) (recalling the "well established rule" rule that issues not raised in the briefs on appeal are deemed abandoned). The 240-month term of imprisonment does not exceed the statutory maximum for the offense. See 18 U.S.C. § 924(c)(1)(A)(iii).

At the sentencing hearing, the district court adopted the Sentencing Guidelines calculations made by the probation office but found that the sentence resulting from correctly calculated offense level of 21 did "not adequately reflect the seriousness of [Square's] criminal conduct." R3 at 3-4. The court explained that "[m]ore than 40 gunshots were fired" by Square, his co-defendant, and the police officer who attempted to arrest them, "creat[ing] a substantial risk of death or serious bodily injury to others." R3 at 4-5. Noting the location and the time of day at which Square and his codefendants committed the robbery, the court further observed that "[i]t simply [was] a miracle that many other persons were not killed." R3 at 5. Accordingly, the court determined that an offense level of 24 "more accurately reflect[ed] the seriousness of [Square's] criminal conduct." Id. Based on an offense level of 24 and a criminal history category of I, the district court determined that the appropriate sentencing range was instead 51 to 63 months. Id.

Pointing out that this was his first felony conviction, Square objected to the upward variance and argued that the statutory minimum of 120 months for Count 3 adequately addressed his criminal conduct during the shoot-out. The district court, after considering the factors listed in 18 U.S.C. § 3553(a), sentenced Square to 291 months, including 51 months for Counts 1 and 2 and 240 months for Count 3, to be served consecutively.

4

On appeal, Square argues that his sentence as to Counts 1 and 2 is unreasonable because the court's three-level upward variance, imposed due to the seriousness of his criminal conduct in shooting at a police officer, resulted in impermissible double-counting. Specifically, he asserts that the Sentencing Guidelines impose a seven-level enhancement for discharging a firearm during a robbery, but that enhancement is not applied if the defendant is also convicted under § 924(c), which Square was. He further points out that he received a two-level enhancement for obstruction of justice for the same conduct. Thus, he argues, the correctly calculated range had already accounted for the circumstances of his criminal conduct, and his case did not fall outside of the heartland of cases anticipated by the guidelines. Square acknowledges that the district court did not enhance his sentence based upon the guideline provision for discharging a firearm during a robbery, but contends that the court's professed reasons for the variation were tied to that conduct and that the structure of the Sentencing Guidelines indicates that Congress contemplated the appropriate sentence for a constellation of crime such as that for which he was convicted. For this reason, Square argues, the upward variance in his sentence as to Counts 1 and 2, when that sentence had already been enhanced based on his participation in the shootout, for which he was also being punished by the sentence of 240 months as to Count 3, effectively

5

punishes him at least twice for the same conduct and renders his sentence unreasonable.

## II. DISCUSSION

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court is no longer required to sentence within the range provided by the Sentencing Guidelines, but is still obligated correctly to calculate that range. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam). We review a defendant's ultimate sentence for "unreasonableness," in light of the factors listed in 18 U.S.C. § 3553(a). See Booker, 543 U.S. at 264, 125 S. Ct. at 767; see also United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005) (per curiam). These factors include: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (4) the need to protect the public, and (5) the guideline range. See 18 U.S.C. § 3553(a). Finally, "[r]eview for reasonableness is deferential," and "there is a range of reasonable sentences." Talley, 431 F.3d at 788.

A. Double-Counting

To the extent that Square alleges impermissible double-counting, the challenge is to the Sentencing Guidelines calculations. "Impermissible double

counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999) (internal quotations and citations omitted). Further, "[d]ouble counting during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing." Id. at 1310.

Here, the district court did not apply a section of the guidelines to enhance Square's sentence by three levels, but rather, after calculating the guideline range, found that range inadequate in light of Square's particular offense conduct.[2] Accordingly, we conclude that the court did not engage in impermissible double-counting, and we proceed to review the sentence for reasonableness.[3]

---

[2]In fact, the application notes for U.S.S.G. § 3C1.2 explain that a 2-level upward departure may be warranted under this provision where the level of culpability was higher than "reckless" and that an upward departure may also be warranted if the offense conduct imposed a risk of death or bodily injury to more than one person, as was the case here. See § 3C1.2, comment. (nn.2, 6). Thus, the Guidelines themselves provide for an adjustment of the range on the same grounds that the district court used and, even for the purposes of Guidelines calculations there would be no double counting because neither of the other enhancements applied - for theft of controlled substances or amount of loss – account for Square's participation in a public shootout with a police officer.

[3]Square argues that our decision in United States v. Brown, 332 F.3d 1341 (11th Cir. 2003), prohibits the upward variance in light of the additional 240-month consecutive sentence under 18 U.S.C. § 924(c). In Brown, we did hold that a defendant's sentence could not be enhanced pursuant to U.S.S.G. § 2K2.1(b)(5) for using a firearm in connection with another offense when that defendant also had been sentenced for violating § 924(c) because it effectively punished the same

B. Reasonableness

In imposing the upward variance from the correctly calculated range, the district court expressed particular concern over both the number of shots fired and the fact that the conduct potentially put the lives of so many people at risk. Neither of these concerns is mentioned in any of the statutes or guidelines contributing to Square's calculated sentencing range. Such concerns reflect the district court's consideration of the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of that offense, to promote respect for the law, and to provide just punishment, all of which are factors listed in § 3553(a). See 18 U.S.C. § 3553(a)(1), (2). Therefore, it was proper for the district court to consider those factors when it increased Square's sentence on Counts 1 and 2 from 46 to 51 months of imprisonment. Further, the five-month upward variance from the Guidelines range is smaller than we have upheld in similar cases. See United States v. Eldick, 443 F.3d 783, 789-90 (11th Cir. 2006) (per curiam) (upholding as reasonable upward variance from 108 to 180 months in healthcare fraud case where the district court had considered the Sentencing Guidelines and the § 3553

---

conduct – the use or possession of a firearm in connection with the offense – twice. Brown, 332 F.3d at 1346. First, Square's sentence does not involve a sentencing enhancement as does Brown, but a post-Booker upward variance made after the calculation of the correct guideline range. See id. at 1343. Second, while § 924(c) punishes possession, the district court based the variance on Square's participation in a public shootout with a police officer – by which he endangered the lives of many others.

factors, and determined that the guideline range was inadequate "because it failed to grasp the full significance and breadth of harm inflicted by [the defendant's] actions;" and record supported this determination); United States v. Valnor, __ F.3d __, 2006 WL 1529118 at *5-7 (11th Cir. 2006) (upholding as reasonable upward variance from 21 to 28 months, still "appreciably" below the statutory maximum,[4] in case involving the procurement of identification documents for illegal aliens where the district court considered the serious nature of the offense, including the threat to national security, and found that the guideline sentence failed adequately to deter or protect the public from future crimes).

Here, as in both Eldick and Valnor, the court considered the Guidelines and the § 3553(a) factors and found that the correctly calculated guideline range was inadequate because it did not reflect the seriousness of Square's offense conduct, particularly his participation in a gun battle with a police officer. Our review reveals that the record supports the concerns of the district court as to the nature, circumstances, and seriousness of the crime. Finally, the court's upward variance from 46 to 51 months here was relatively small and is still well below the twenty-

---

[4] The district court actually found that a 42-month sentence was appropriate, but then granted a downward departure, pursuant to U.S.S.G. § 5K1.1. Valnor, __ F.3d at __, 2006 WL 1529118 at *7.

five-year statutory maximum.  See 18 U.S.C. § 2118(c)(1).  For these reasons, we conclude that Square's sentence of 51 months as to Counts 1 and 2 is reasonable.

## III. CONCLUSION

Square appeals his 51-month sentence for violation of the CSRPA, imposed as part of a total 291-month sentence for robbing a pharmacy.  Because we conclude that Square's sentence was reasonable, considering the 18 U.S.C. § 3553 factors, particularly the need for the sentence to reflect the circumstances and seriousness of the offense, the district court did not err in varying the sentence upward from the correctly calculated Guidelines range.  Accordingly, we **AFFIRM.**