[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14784
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 8, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-10020-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REINIER HERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 8, 2008)**

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Reinier Hernandez appeals his sentence for conspiracy to illegally bring in or harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).

**I.**

On March 30, 2007 Hernandez was indicted for one count of conspiracy to illegally bring in or harbor aliens and fourteen counts of bringing or attempting to bring an alien into the United States at a place other than a designated port of entry. He pleaded not guilty, and the case proceeded to trial.

At trial, the government first called Elson Irizarry, a special agent of the U.S. Coast Guard Investigative Service. Irizarry testified to the following. On October 21, 2006 he was working undercover investigating a conspiracy to smuggle Cuban aliens into the United States. That morning, he, Hernandez, and two other coconspirators met and discussed the logistics of the plan. Hernandez was going to pilot the boat that would be used to transport the aliens to a point where he would rendevous with a small boat carrying the necessary supplies. After the supplies were transferred, he would pilot the small boat back to shore. Additionally, Hernandez was responsible for obtaining extra fuel cans, preparing the boat that he would operate, and getting a GPS navigation device. While the four men talked about how the operation was going to work, they drove around getting the necessary supplies, including the GPS and some fuel containers.

Hernandez was part of a discussion about how to use the GPS and helped load the fuel containers into the truck. However, the attempt scheduled for that night was postponed. Irizarry understood that it could not proceed as planned because of the weather.

The government then called Aaron Woods, another special agent with the Investigative Service. Woods testified to the following. His primary role in the investigation was to act as a case officer for a confidential informant named Juan Rodriguez. However, Woods personally saw Hernandez in a car with the other members of the conspiracy on October 21, 2006. When the October 21 attempt was postponed until December 2, someone replaced Hernandez as boat operator.

The government then rested its case-in-chief. Before Hernandez put on his case, the government dismissed the fourteen counts of attempting to smuggle aliens into the United States, leaving only the conspiracy count.

Hernandez called Rodriguez, the confidential informant, as a witness for the defense. Rodriguez testified to the following. The October 21 smuggling run was cancelled because Hernandez claimed that the members of his family that he wanted to smuggle into the United States had been involved in a domestic dispute and had been arrested. A later trip was cancelled because Hernandez claimed that

the police had seized the boat he was going to use. However, Rodriguez never heard Hernandez say that he would not participate in the smuggling.

Hernandez then testified on his own behalf. He admitted that he had originally agreed to help with the smuggling operation in exchange for his brother and nephew being smuggled from Cuba to the United States and that he had helped "get everything ready for the trip" on the morning of October 21. He also testified that he had paid $10,000 for his sister-in-law to be brought over. However, Hernandez said, he had lied to Rodriguez and the others about both the domestic dispute and the police seizing the boat. In fact, Hernandez claimed, he had simply been making up reasons to not participate in the smuggling because he was scared and believed it was wrong. Hernandez concluded his direct examination testimony by saying that he did not hear from the smugglers again until December 31, 2006, at which time he declined to participate.

On cross-examination, Hernandez admitted that: (1) he went to the mall with another member of the conspiracy to buy phone cards to call the Cubans who were to be smuggled into the United States; (2) he initially agreed to operate one of the boats to be used in the smuggling; (3) he knew that there would be more than just his family members on the boat; (4) he knew that the other conspirators were profiting from smuggling in the aliens; (5) he had arranged for six aliens to

4

be smuggled; and (6) he never contacted law enforcement about the smuggling scheme.

During closing arguments Hernandez's attorney asserted that Hernandez was not guilty because Rodriguez had entrapped him and because he had withdrawn from the conspiracy before an overt act was taken. The jury, however, found Hernandez guilty of conspiracy to illegally bring in or harbor aliens.

The probation office prepared a presentence investigation report, which included a description of Hernandez's conduct relevant to sentencing. The description included Hernandez's participation in the conspiracy to smuggle twenty-eight to thirty aliens into the United States on October 21, 2006. It described Hernandez's role as "a boat operator who provided technical information to the [confidential informant] on the utilization of GPS and navigation to Cuba. He was also to participate in a boat transfer on the day of the smuggling event in the [October 21] conspiracy." The PSR went on to say that, when the October 21 trip was cancelled due to some of the aliens being arrested in Cuba, Hernandez and the others prepared to smuggle fourteen aliens on December 2, 2006. According to the PSR, several of Hernandez's co-conspirators attempted to make a smuggling run on that day, but they were caught.

The probation office assigned Hernandez a base offense level of twelve under U.S.S.G. § 2L1.1(a)(3), the guideline for smuggling, transporting, or harboring an unlawful alien with no aggravating circumstances. It then gave him a three-level enhancement under § 2L1.1(b)(2)(A) for attempting to smuggle between six and twenty-four unlawful aliens. With an adjusted offense level of fifteen and a criminal history category of I, Hernandez's recommended guideline range was between eighteen and twenty-four months imprisonment.

Hernandez objected to the recitation of his offense conduct in the PSR. First, he asserted that it was incorrect because he had only discussed participating in the October 21 trip and because he had not actually operated a boat or instructed anyone how to use a GPS. He also asked that the description of his offense conduct be amended to include a statement that he had prevented the October 21 conspiracy by telling the other conspirators that the aliens had been arrested in Cuba.

Hernandez also objected to his guideline calculation. He argued that the probation office should not have assigned him the three level enhancement for attempting to smuggle between six and twenty-four aliens. Additionally, he argued that he was entitled to the following: (1) a three-level decrease in his offense level under U.S.S.G. § 2L1.1(b)(1) because he did not commit the offense

6

for profit; (2) a two-level minor-role reduction under § 3B1.2(b) because he did not actually participate in the smuggling; and (3) a two-level acceptance of responsibility reduction under § 3E1.1(a) because he testified at trial and admitted his involvement with the conspiracy.

At sentencing, the court overruled all of Hernandez's objections and adopted the PSR. Then, after acknowledging that the guidelines were only advisory and explicitly considering the 18 U.S.C. § 3553(a) factors, the court sentenced Hernandez to thirty-six months imprisonment. The court explained that it chose to vary upward because: (1) the breadth of the conspiracy; (2) a sentence within the guideline range was insufficient to deter others from smuggling; and (3) the sentence was necessary to protect members of the U.S. Coast Guard and other law enforcement officers from the dangers associated with alien smuggling. Hernandez timely appealed his sentence.

## II.

Hernandez contends that the district court erred in three ways in calculating his advisory sentencing guideline range. All three relate to enhancements or reductions in adjusted offense levels due to specific offense characteristics. The offense conduct guideline for conspiracy to illegally bring in or harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) is U.S.S.G. § 2L1.1. U.S.S.G. App. A.

However, that guideline, which covers both substantive offenses involving smuggling, transporting, or harboring an unlawful alien and conspiracy to do so, does not explain how to determine the specific offense characteristics for a conspiracy. Id. § 2L1.1 Fortunately, the guideline for conspiracies, attempts, and solicitations, § 2X1.1, does. It states that the specific offense characteristics of the crime of conspiracy are those "of any intended offense conduct that can be established with reasonable certainty." Id. § 2X1.1(a). In other words, courts should apply the discernable, non-speculative specific offense conduct enhancements that apply to the crime that the conspirators intended to commit and the specific conduct enhancements that apply to the overt acts undertaken in the course of the conspiracy. See id. at cmt. n.2 ("[T]he only specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred.").

Hernandez first argues that the district court erred in assigning him a three-level increase to his offense level for smuggling six to fourteen aliens under U.S.S.G. § 2L1.1(b)(2) because he withdrew from the conspiracy before the attempted alien smuggling in December 2006. A defendant's participation in a conspiracy is presumed to continue "until all objects of the conspiracy have been accomplished or until the last overt act has been committed by any of the

8

conspirators." United States v. Arias, 431 F.3d 1327, 1340 (11th Cir. 2005). The defendant bears the burden of proving his withdrawal from the conspiracy by showing that he: (1) took "affirmative steps to defeat the objectives of the conspiracy"; and (2) "communicated his withdrawal either to his co-conspirators or to law enforcement." Id. at 1340–41.

Hernandez was still a part of the conspiracy when his coconspirators attempted to smuggle fourteen aliens into the United States. Even if one credits Hernandez's testimony that he defeated the objectives of the conspiracy by falsely claiming that some of the aliens to be smuggled had been arrested, Hernandez did not meet the second requirement for withdrawal until December 31. It is undisputed that Hernandez did not reveal the conspiracy to law enforcement, so the only way for him to effectively withdraw would be to "communicate[] his withdrawal to . . . his co-conspirators." Id. at 1341. However, he did not communicate his withdrawal to the other conspirators until December 31, 2006. This was almost a month after the December 2 attempt to smuggle fourteen aliens into the United States. Hernandez was therefore a member of the conspiracy to smuggle those fourteen aliens. Because that attempt was an overt act undertaken in the course of the conspiracy, the district court did not err by applying the

9

U.S.S.G. § 2L1.1(b)(2) enhancement for attempting to smuggle between six and twenty-four aliens to Hernandez.

Hernandez next argues that the district court erred by not giving him a two-level minor-role reduction under U.S.S.G. § 3B1.2(b).  We review the district court's determination of a defendant's role in the offense only for clear error. United States v. De Varon, 175 F.3d 930, 936 (11th Cir. 1999) (en banc).

"The essential elements of criminal conspiracy are an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators."  United States v. Avila-Dominguez, 610 F.2d 1266, 1271 (5th Cir. 1980).[1]  Therefore, Hernandez's crime was complete when he agreed to participate in the alien smuggling and any one of his coconspirators committed an overt act in furtherance of that conspiracy.  Both of these events occurred during the morning of October 21, 2006.  At that time, Hernandez had agreed and intended to operate one of the boats that would be used in the smuggling attempt.  The fact that he later changed his mind does not affect his intentions when he entered the conspiracy, violating 8 U.S.C. §

---

[1]  See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

1324(a)(1)(A)(v)(I). Therefore, we determine whether the district court clearly erred based on his agreed upon role in the conspiracy as it was when he entered it.

A defendant may receive a minor-role reduction if he "is less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. When reviewing a district court's determination of a defendant's role in the offense, we look to two factors: (1) "the defendant's role in the relevant conduct for which she has been held accountable at sentencing"; and (2) his "role as compared to that of other participants in [his] relevant conduct." De Varon, 175 F.3d at 940.

Although Hernandez was held accountable for the acts of the entire conspiracy, we conclude that he does not meet the second De Varon factor. He participated in discussions about the logistics of the plan, he was responsible for obtaining extra fuel cans, preparing one of the boats, and obtaining a GPS device. He was also going to actually pilot the boat that would be used to transport the aliens to a rendevous with a small boat carrying supplies that were necessary for the scheme to work, and then he was going to pilot that small boat back to shore. (The reason for use of the two boats was to help hide the crime by making it appear that the boat that would actually be used to smuggle the aliens did not have the supplies to do so.) By way of comparison, his coconspirators who received

11

neither role enhancements nor role reductions had the following roles in the plan: (1) contacting the Cuban aliens to tell them where to meet the boat; (2) obtaining supplies and information for the smugglers; (3) purchasing a cell phone for the scheme's ringleader; (4) providing GPS locations and maps of the pick up point in Cuba; and (5) lending money for supplies and handling logistics for towing one of the boats. Hernandez did not play a substantially less culpable role than these members of the conspiracy, so he does not meet the second De Varon factor. Therefore, it was not clear error for the district court to find that he did not play a minor role in the conspiracy.

Hernandez's third argument is that he was entitled to a two-level acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a) because he admitted his involvement in the conspiracy when he testified at trial. We review a district court's factual findings concerning acceptance of responsibility only for clear error. United States v. Williams, 408 F.3d 745, 756 (11th Cir. 2005). Generally, pleading not guilty and proceeding to trial will preclude a defendant from receiving an acceptance of responsibility reduction. See U.S.S.G. § 3E1.1 cmt. n.2. However, a defendant who goes "to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)" and whose "pre-trial

12

statements and conduct" demonstrate acceptance of responsibility may, in rare cases, be entitled to an acceptance of responsibility reduction. Id.

Because "'the district court is in a unique position to evaluate whether a particular defendant has truly accepted the responsibility for his actions,' . . . we will not disturb its determination of this issue unless we find the denial lacked foundation." United States v. Matthews, 168 F.3d 1234, 1250 (11th Cir. 1999) (internal citation omitted). In other words, we review only for clear error. Id.

When Hernandez argued that he was not guilty because he had withdrawn from the conspiracy, he was attempting to assert his factual innocence. Therefore he does not even fall within the category of those eligible to receive an acceptance of responsibility reduction in spite of their having pleaded not guilty. The district court did not clearly err.

## III.

Hernandez next contends that his sentence was substantively unreasonable. We review the final sentence only for abuse of discretion. See Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 597 (2007). The defendant bears the burden of establishing that the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

13

A sentence will be unreasonable only if it "fails to achieve the purposes of sentencing as stated in section 3553(a)." Id. Hernandez's sentence was outside the guidelines range, so it is not entitled to an expectation of reasonableness. See id. ("[W]hen the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one."). However, simply exceeding the guideline range does not make a sentence unreasonable. See e.g., United States v. Valnor, 451 F.3d 744, 752 (11th Cir. 2006) (affirming a sentence in excess of the guidelines range).

District courts must to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The weight accorded to the § 3553(a) factors is within the district court's discretion. United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007). When the court determines that a non-guideline sentence is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at ___, 128 S. Ct. at 597. In reviewing the sentence for reasonableness, an appellate court "may consider the extent of the deviation, but must give due deference to the district

14

court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at ___, 128 S. Ct. at 597.

We conclude that Hernandez's sentence was reasonable. The district court articulated three reasons for varying above the advisory guideline range. The first was that the conspiracy in which Hernandez participated was especially widespread. In other words, the "nature and circumstances of the offense" required a more severe sentence to "reflect the seriousness of the offense . . . and to provide just punishment for [it]." 18 U.S.C. § 3553(a). The district court's second reason, that a sentence within the guidelines would not provide a sufficient deterrent to others, is a way of 'promot[ing] respect for the law." Id. The district court's third reason—that a sentence that did not deter others would increase the number of people who attempt to smuggle aliens into the United States, endangering the members of the U.S. Coast Guard and other law enforcement agencies who have to respond—is another aspect of the seriousness of the offense. Id. All of these are proper reasons for assigning a sentence. Hernandez has failed to meet his burden of showing that the district court abused its discretion.

**AFFIRMED.**