[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16622
Non-Argument Calendar

_____

D. C. Docket No. 06-00075-CR-4-RLV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARL MITCHELL HOOPER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 23, 2009)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Carl Mitchell Hooper appeals his 190-month sentence, imposed within the applicable guideline range, after pleading guilty to crimes involving sexual activity with a minor. On appeal, he argues that his sentence was unreasonable. For the reasons set forth below, we affirm.

**I.**

A federal grand jury returned an indictment against Hooper, charging him with: knowingly transporting a minor in interstate commerce with intent that such individual engage in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2423(a) (Count One); and knowingly persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in sexual activity for which a person could be charged with a criminal offense, in violation of 18 U.S.C. § 2422(a) (Count Two). The indictment alleged that the events giving rise to the charges occurred on or about June 15 and 16, 2006. Hooper pled guilty to both counts in the indictment.

In preparing a pre-sentence investigation report ("PSI"), the probation officer provided the following background information. In March 2003, Hooper was convicted in Tennessee of sexual battery; according to the police report in that case, a 17-year old girl referred to as "CG" reported that Hooper had come to her residence and forcibly raped her. Less than two months after Hooper's conviction

2

in that case, and while he was out on probation, Tennessee law enforcement officers responded to a report by CG of aggravated assault, and, upon their arrival, she informed them that Hooper had choked and raped her. The officers located Hooper nearby, who, being armed with knives, swung a knife at an officer, attempted to steal a patrol car, and punched an officer in the head two or three times. Although CG later declined to pursue the rape charge against Hooper, he was convicted of three counts of aggravated assault, assault, resisting arrest, and evading arrest. Hooper was ultimately released from custody in September 2005.

Some time in late 2005 or early 2006, Hooper, then 27 years old, and the victim in this case – referred to here as "LD" – then 14 years old, began a sexual relationship. In May 2006, LD's mother called the police after learning that LD was pregnant with an older man's child. In response, Detective Caroline Cobb of the Walker County, Georgia, Sheriff's Office spoke to Hooper on the telephone, and Hooper informed her that he was 27 years old, was the father of LD's unborn child, and was on probation for sexual battery in Tennessee. A few days later, Hooper was charged with statutory rape in Georgia and was subsequently released on a $5,000 bond. Despite being admonished not to contact LD, LD's stepfather informed Detective Cobb that Hooper called LD less than 15 minutes after he was released on bond.

3

On June 14, 2006, law enforcement officers in Tennessee obtained a warrant charging Hooper with violating sex offender registration laws, as he had moved without providing proper notification. The following morning, LD's mother and stepfather discovered that LD was missing. LD's stepfather informed Detective Cobb that LD had been upset the previous evening after learning that Hooper was to be arrested in Tennessee, and he discovered that LD had left the house through her bedroom window at some point during the night.

The following evening, law enforcement officers in Jacksonville, Florida, found Hooper and LD sleeping on a public beach. The officers ultimately learned that Hooper had picked up LD the previous day, traveled to Tennessee with her, and stayed in a motel room, where they engaged in sexual intercourse. Then, on their way to Jacksonville, they traveled through Georgia, stopping at a rest area where they engaged in sexual activity in a wooded area. They also engaged in sexual activity on the beach in Jacksonville. Hooper informed the officers that he knew that LD was 14 years old, but thought it was "okay" since he was the father of her unborn child.

In calculating Hooper's applicable guideline range, the probation officer initially determined that Hooper had a base offense level of 24, pursuant to U.S.S.G. § 2G1.3(a). The probation officer then applied a two-level enhancement

4

because Hooper unduly influenced a minor to engage in prohibited sexual conduct, pursuant to § 2G1.3(b)(2)(B), and a two-level enhancement because the offense involved the commission of a sex act or sexual act, pursuant to § 2G1.3(b)(4)(A). The probation officer then applied a 2-level reduction for acceptance of responsibility, giving Hooper a total offense level of 26.

However, because the instant offenses were covered sex offenses and Hooper had a prior conviction in Tennessee for sexual battery, the probation officer determined that Hooper qualified as a Repeat and Dangerous Sex Offender Against Minors under U.S.S.G. § 4B1.5. Hooper's status as such an offender, coupled with the applicable statutory maximum penalty of 30 years' imprisonment, gave him a new, superseding offense level of 34, as this offense level was greater than the offense level otherwise applicable. This offense level was reduced by two levels for acceptance of responsibility. Hooper's status as a repeat sex offender also gave him a criminal history category of V, which, when combined with his offense level of 32, produced an applicable guideline range of 188 to 235 months' imprisonment.

Hooper raised three objections at sentencing. First, he argued that he should have received a three-level reduction for acceptance of responsibility instead of a two-level reduction. Second, Hooper objected to his classification as a repeat and

5

dangerous sex offender against minors under § 4B1.5. Defense counsel asserted that, while § 4B1.5 was "technically" applicable, it was inappropriate under the facts of the case because Hooper was not a sexual predator, but was rather engaged in long-term relationships with both CG and LD. In this respect, defense counsel referred to a social history report of Hooper, purportedly indicating that, although he was 28 years old, he was "emotionally delayed" and thus on par with teenagers such as CG and LD. Defense counsel then argued that, if the court agreed that § 4B1.5 did not apply, then it should address his objection to the two-level enhancement under § 2G1.3(b)(2)(B) for unduly influencing a minor to engage in sexual activity. On that point, counsel emphasized that LD was the one who initiated the sexual activity, she called Hooper upon his release from custody, and Hooper wanted to take responsibility for the unborn child on account of his love for LD.

The district court sustained Hooper's first objection, finding that he was entitled to a three-level reduction for acceptance of responsibility. However, the court overruled Hooper's other two objections. With respect to the two-level enhancement for unduly influencing a minor to engage in sexual activity, the court found it "disturb[ing]" that, "even if the girl called him, he didn't have to go get her, particularly after he had been told to stay away from her. I mean here is a

6

fellow out on bond for an offense and he goes right back to doing the same thing."

The court also found that Hooper qualified as a repeat and dangerous sex offender against minors under § 4B1.5, emphasizing that Hooper's two Tennessee offenses involving CG occurred one after the other and involved violence, demonstrating that Hooper had a "total disregard for the law," which was "compounded by the fact that when he got out on bond, the court ordered him to stay away from this young girl and he just ignored what the court said . . . ." As a result of these rulings, Hooper's offense level became 31, giving him a guideline range of 168 to 210 months' imprisonment.

Defense counsel then requested that the court impose a sentence below the applicable guideline range, emphasizing Hooper's traumatic childhood, his lack of emotional maturity, and the reciprocal and devotional aspects of his relationship with LD. Rather than imposing a sentence at that time, the district court, upon defense counsel's request, sent Hooper to receive a psychological evaluation in order to determine his competency.

After Hooper was found competent to proceed with sentencing, the court held another hearing, at which time the government requested that the court impose a sentence at the high-end of the applicable guideline range, arguing that Hooper was a sexual predator. Defense counsel responded by generally repeating the

arguments advanced at the first sentencing hearing and introducing the following documents, which the court admitted into the record: an affidavit prepared by LD; an affidavit prepared by CG; and Hooper's medical and psychiatric records.

After Hooper briefly addressed the court, the court pronounced its sentence as follows:

> Well, it wasn't hard for the court to come to the conclusion that the young lady was pursuing Mr. Hooper as much as he was pursuing her. There is no question about that. . . . Of course I understand the nature of the charge and the gravity of the charge.
>
> I understand that Mr. Hooper obviously did not learn from the first time, which is significant to me and to my deciding what level will be the outcome of the case.

The court then sentenced Hooper to 190 months' imprisonment and 30 years of supervised release, explaining:

> I believe, according to 3553 of Title 18 United States Code that this is adequate punishment. I believe that it, plus the extended period of supervised release, protects the public. I think it fits all of the requirements of 3553. I think for the defendant to have any further contact with the young lady and/or his child needs to be under the supervision of the probation department. I hope this will deter the defendant in the future to avoid any further contact with young girls.

Defense counsel objected to the sentence on the ground that it was unreasonable under § 3553(a). This appeal followed.

## II.

We review a defendant's sentence for reasonableness under an

8

abuse-of-discretion standard. <u>Gall v. United States</u>, 552 U.S. 38, __, 128 S.Ct. 586, 591, 594, 597, 169 L.Ed.2d 445 (2007); <u>United States v. Pugh</u>, 515 F.3d 1179, 1190-91 (11th Cir. 2008). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a).

> The factors in § 3553(a) that the court must consider are:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

<u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)). It is sufficient for the district court to acknowledge that it has considered the § 3553(a) factors, but it need not explicitly discuss each of them. <u>United States v. Scott</u>, 426 F.3d 1324, 1329 (11th Cir. 2005).

We will only reverse a procedurally proper sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the section 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case. In this

9

respect, our review for reasonableness is deferential, as appellate judges are not authorized to substitute their personal views of what might be the best sentence for the sentence imposed by the district judge.

**III.**

On appeal, Hooper argues that his sentence was substantively unreasonable under the § 3553(a) factors.[1]  We disagree.  This sentence was well below the 30-year statutory maximum penalty.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (concluding that the court's sentence was reasonable in part because it was well below the statutory maximum), cert. denied, (U.S. June 22, 2009) (No. 08-10528); United States v. Valnor, 451 F.3d 744, 751-52 (11th Cir. 2006) (same).  In addition, in arriving at its sentence, the district court stated that it had considered the § 3553(a) factors and found that its sentence constituted "adequate punishment" under those factors.  See 18 U.S.C. § 3553(a)(2)(A) (instructing the district court to consider the need for its sentence "to provide just punishment for the offense").  The court also concluded that its sentence of

---

[1]  Hooper also argues that his sentence was procedurally unreasonable because the court never resolved his objection to the two-level enhancement for unduly influencing a minor to engage in sexual activity, pursuant to U.S.S.G. § 2G1.3(b)(2)(B).  However, this argument is entirely without merit, as the district court did overrule this objection at sentencing.  We also note that this enhancement had no effect on the calculation of Hooper's applicable guideline range in light of the application of § 4B1.5.  See U.S.S.G. § 4B1.5(a)(1) (providing for a superseding offense level based on the statutory maximum penalty where that offense level is greater than the Chapter Two offense level otherwise applicable).

incarceration, coupled with the extended 30-year period of supervised release, would protect the public, and it expressed its hope that the sentence would "deter [Hooper] in the future to avoid any further contact with young girls." See 18 U.S.C. § 3553(a)(2)(B)-(C) (instructing the district court to consider, respectively, the need for its sentence "to afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant").

Furthermore, the district court appropriately acknowledged the "gravity of the charge," as Hooper, a 27-year old man, knowingly engaged in a sexual relationship with a 14-year old girl, impregnated her, and eloped with her, taking her away from her family. See Pugh, 515 F.3d at 1202 ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases."); 18 U.S.C. § 3553(a)(1), (2)(A) (requiring the court to consider, respectively, "the nature and circumstances of the offense," and "the need for the sentence . . . to reflect the seriousness of the offense").

Hooper argues that his offense was less severe than the typical child-predator offense, as Hooper and LD were engaged in a long-term, romantic relationship of sorts, with LD "pursuing Mr. Hooper as much as he was pursuing her." Nonetheless, Hooper knew that his relationship with LD was unlawful, and after Hooper was charged with statutory rape in connection with this relationship,

11

he immediately resumed the relationship, ignoring the state court's specific instructions to the contrary. As a result, the district court concluded that, even if LD was the one to contact Hooper upon his release, Hooper's willingness to ignore the court's admonition showed a "total disregard for the law." See 18 U.S.C. § 3553(a)(2)(A) (instructing the district court to consider the need for its sentence "to promote respect for the law").

Hooper also argues that his "borderline intellectual functioning" mitigated the severity of his offense because he was emotionally closer in age to teenagers than he was to people his own age. However, Hooper appears to rely only on a social history report that, although referenced by defense counsel at sentencing, was never actually admitted into the record. In any event, that report, which Hooper includes in his record excerpts, does not diagnose Hooper with any sort of social or psychological impairment and does not establish that Hooper was incapable of forming relationships with people his own age.[2] Indeed, the PSI provides that, growing up, "most of [Hooper's] free time was spent with his brother's friends, all of whom were five or six years older . . . ." Hooper similarly relies on his troubled childhood as a mitigating factor, but there is also nothing in

---

[2] Hooper states at one point in his brief that he "has recently been diagnosed as having borderline intellectual functioning, i.e., borderline mentally retarded," but he provides no support for this assertion.

the record establishing that Hooper's childhood was responsible for, let alone connected with, his sexually deviant behavior.

Hooper also contends that his prior convictions involving CG were not severe because she was a 17-year old girl with whom he was in a serious relationship. Regardless of the legitimacy of Hooper's relationship with CG, Hooper ignores the fact that his convictions were otherwise severe. First, Hooper was convicted of sexual battery, and CG informed the police upon their arrival that Hooper had raped her. Furthermore, less than a mere two months after that conviction, CG called the police again and reported that Hooper had choked and raped her. When the police arrived at the scene, Hooper was armed with knives, swung a knife at an officer, attempted to steal a patrol car, and physically assaulted an officer. Although CG later declined to pursue the rape charge, Hooper was convicted of three counts of aggravated assault, assault, resisting arrest, and evading arrest. Thus, Hooper's prior convictions in this regard were relatively serious, violent, and reflective of his disregard for the law. See 18 U.S.C. § 3553(a)(1) (instructing the district court to consider "the history and characteristics of the defendant").

Finally, Hooper contends that the court's sentence created an unwarranted sentencing disparity because he would have received a lesser sentence had he been

prosecuted in state court. <u>See</u> 18 U.S.C. § 3553(a)(6) (instructing the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). However, we have recently rejected such an argument, holding that § 3553(a)(6) is concerned only with unwarranted sentencing disparities at the <u>federal</u> level. <u>United States v. Docampo</u>, No. 08-10698, manuscript op. at 22-26 (11th Cir. June 15, 2009).

In sum, we conclude that Hooper has not met his burden, in light of the record and the pertinent § 3553(a) factors, to rebut the presumption of reasonableness attached to the court's within-range sentence. Accordingly, we affirm.

**AFFIRMED.**