[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Dec. 21, 2009
THOMAS K. KAHN
CLERK

No. 09-12108
Non-Argument Calendar

_____

D. C. Docket No. 08-00402-CR-T-17-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUILLERMO ARROYO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 21, 2009)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Guillermo Arroyo appeals from his 135-month concurrent sentences imposed for (1) conspiring to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United

States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), (b), and 21 U.S.C. § 960(b)(1)(B)(ii), and (2) possessing with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a), and 21 U.S.C. § 960(b)(1)(B)(ii). Arroyo argues that: (1) the district court should have used a lower base offense level because he had a minimal role in the conspiracy; and (2) his sentences were procedurally and substantively unreasonable. After careful review, we affirm.

Ordinarily, a district court's determination of a defendant's role in the offense is a finding of fact we review for clear error. See United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). However, where, as here, the defendant has failed to raise the issue before the district court, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). We review the ultimate sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

First, we reject Arroyo's claim that the district court plainly erred by not sua sponte granting him a minimal role reduction. Pursuant to U.S.S.G. § 3B1.2(a), a defendant may receive an adjustment for his minimal role in the offense if he is

2

"plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, cmt. n.4. A four-level, minimal role reduction under § 3B1.2(a) applies to a defendant who lacks "knowledge or understanding of the scope and structure of the enterprise . . . . It is intended that the downward adjustment for a minimal participant will be used infrequently." Id.

Under De Varon, the proponent of the downward adjustment bears the burden of establishing his minimal role in the offense by a preponderance of the evidence. 175 F.3d at 934, 939. The determination of whether the defendant warrants a minimal role reduction requires a two-part analysis of a defendant's conduct. Id. at 940-45. First, the court "must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing." Id. at 945. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. "[W]hen a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43.

In considering the second prong, the defendant's role is compared to the other participants in that relevant conduct. Id. at 945. To apply the adjustment under this prong, the district court must find that "the defendant was less culpable than most other participants in [his] relevant conduct." Id. at 944. Even if a defendant's role is "less than that of other participants engaged in the relevant conduct," he might not be entitled to an adjustment because, in some cases, there are no minimal participants. Id.

Applying the first prong of the De Varon test here, the district court held Arroyo accountable only for the 8,697 kilograms of cocaine recovered by the Coast Guard. While Arroyo argues on appeal that he should have received a minimal role reduction because he was a "lowly placed participant" in the larger conspiracy and had no interest in the contraband, had no decision-making authority, and was not involved in planning the voyage, he cannot meet his burden of proving entitlement to such a reduction merely by "pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." Id. at 941. Moreover, Arroyo's relevant conduct was limited to his own act of drug importation, and as De Varon held, "a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43. Because the relevant conduct for

4

which Arroyo was held accountable was identical to his actual conduct -- participating in the attempted importation of 8,697 kilograms of cocaine -- his claim for a minimal role reduction fails under the first prong of De Varon.

Turning to the second prong of the De Varon analysis, Arroyo has failed to present evidence that his conduct was less significant than his three codefendants. Arroyo emphasizes that he was simply a crew member, had no interest in the drugs, and had no decision-making authority. But the owners and organizers that Arroyo alludes to are not discernable from this record, and Arroyo cannot meet his burden merely by asserting that he was on the lower level of a larger criminal conspiracy. Id. at 944 (instructing that the district court should look to other participants in the offense only to the extent they are identifiable or discernable from the evidence). Therefore, Arroyo has not shown that the district court plainly erred in not sua sponte granting him a minimal role reduction. See Rodriguez, 398 F.3d at 1298; De Varon, 175 F.3d at 945.

We likewise are unpersuaded that his sentences are unreasonable. In reviewing sentences for reasonableness, we perform two steps. Pugh, 515 F.3d at 1190. First, we must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the §

3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).[1]  The district court need not state on the record that it explicitly considered each factor and need not discuss each factor.  United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).  Rather, "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient" under United States v. Booker, 543 U.S. 220 (2005).  Id. When the district court imposes a within-guidelines sentence, it need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita, 551 U.S. at 356.

If we conclude that the district court did not procedurally err, we must consider the "'substantive reasonableness of the sentence imposed under an abuse-of-discretion standard,'" based on the "'totality of the circumstances.'"

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

Pugh, 515 F.3d at 1190 (quoting Gall, 552 U.S. at 51). A sentence may be substantively unreasonable if it does not achieve the purposes of sentencing stated in 18 U.S.C. § 3553(a). Id. at 1191. A sentence within the guidelines range is ordinarily expected to be reasonable. Talley, 431 F.3d at 788. Moreover, when considering whether a defendant's sentence is reasonable, we have compared the sentence actually imposed to the statutory maximum. See, e.g., United States v. Valnor, 451 F.3d 744, 751-52 (11th Cir. 2006) (upholding sentence as reasonable in part because it was "appreciably below the length of the statutory maximum").

The weight accorded to the § 3553(a) factors is left to the district court's discretion, and we will not substitute our judgment in weighing the relevant factors. United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007). The fact that we might reasonably conclude that a different sentence is appropriate is not sufficient to warrant reversal. United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both the record and the factors in section 3553(a)." United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (quotation and brackets omitted).

Arroyo also has not demonstrated that his sentences are procedurally unreasonable. The district court allowed both parties to present arguments on what

the appropriate sentences should be, and considered Arroyo's arguments for a reduced sentence on the basis of the 18 U.S.C. § 3553(a) factors. Particularly, the court heard Arroyo's argument as to the nature and circumstances of the offense -- that he was at the low level of the broader conspiracy. The court also considered Arroyo's individual characteristics -- that he was illiterate, 55 years old at the time of sentencing, in poor health, had no prior criminal history, and has a family in Colombia to support, and that he would be treated less favorably by the criminal justice system due to his alien status. The court further said that it considered the guidelines to be "advisory" and that it considered the PSI, and twice said that it considered the § 3553(a) factors. The court nonetheless found the concurrent 135-month sentences to be "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." On this record, Arroyo's arguments that the district court failed to adequately explain its reason for the sentences and that his sentence was procedurally unreasonable must fail.

Nor has Arroyo demonstrated that his sentences were substantively unreasonable. Arroyo argues that the district court erred in not varying below the advisory guidelines range to account for his status as a foreign national subject to an immigration detainer because that status will cause him to be ineligible for desirable prison programs that might otherwise be available. However, the district

court was aware of Arroyo's status as a Colombian national, was not required to discuss each § 3553(a) factor, and was within its discretion to assign weight to each factor. See Amedeo, 487 F.3d at 832; Talley, 431 F.3d at 786.

As for Arroyo's argument that his sentences are unreasonably disparate when compared to other "boat cases," the statistics that Arroyo points to and the circumstances of these unrelated cases are not part of this record. We therefore cannot determine whether the circumstances of those cases bear relation to the circumstances of this case. See United States v. Campbell, 491 F.3d 1306, 1317 (11th Cir. 2007) (holding that the statistics cited by Campbell regarding other defendants' sentences were merely "bare numbers without context" and thus, were unpersuasive). Moreover, we will not substitute our judgment with respect to the weight given to these statistics and again, the district court was not required to explicitly discuss this factor. See Amedeo, 487 F.3d at 832; Talley, 431 F.3d at 786.

In sum, the record shows that the district court gave Arroyo's case an individualized review, explicitly said twice that it considered the § 3553 factors, ultimately agreed with the government's assertion that the nature, circumstances, and seriousness of the offense weighed in favor of imposing concurrent 135-month sentences, and set forth enough to show that it considered both parties' arguments

9

and had a "reasoned basis for exercising its legal decisionmaking authority." Rita, 551 U.S. at 356. Arroyo's sentences also were at the bottom of the guidelines range and well below the statutory maximum of life imprisonment. See 21 U.S.C. § 960(b)(1)(B); Valnor, 451 F.3d at 752; Talley, 431 F.3d at 788. Moreover, this is a case involving an "extraordinary" quantity of cocaine -- nearly 8,700 kilograms. For these reasons, Arroyo has not met his burden, in light of the record and the pertinent § 3553(a) factors, to show that his sentences were unreasonable.

**AFFIRMED.**