[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13997
Non-Argument Calendar
_____

D.C. Docket No. 8:18-cr-00470-SCB-JSS-2

UNITED STATES OF AMERICA,

                                    Plaintiff - Appellee,

versus

SANTIAGO SILVA-ORTIZ,
a.k.a. Santiago Silva,

                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 28, 2020)

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

Santiago Silva-Ortiz ("Silva-Ortiz") appeals his 151-month sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, and aiding and abetting the possession of cocaine aboard such a vessel.  The only issue before this Court is whether the sentence is substantively unreasonable.  Because we find that Silva-Ortiz's sentence is substantively reasonable, we affirm the sentence.

## I.    FACTUAL AND PROCEDURAL HISTORY

In early October 2018, Eulices de Jesus Barliza-Lopez ("Barliza-Lopez") and Silva-Ortiz were hired to transport bales of cocaine aboard a go-fast vessel to the Dominican Republic.  Barliza-Lopez, a Colombian fisherman, was hired to captain the vessel.  Silva-Ortiz, a former member of the Colombian National Police, was hired as a load guard to protect the bales of cocaine and was given a Glock 19 pistol and three thirty-round magazines.  Barliza-Lopez hired Juan Carlos Epieyu ("Epieyu") and Apolinar Pushaina ("Pushaina") to serve as mariners.  For their efforts, Barliza-Lopez was offered approximately $9,554, and Epieyu and Pushaina were offered $1,500 each.  Silva-Ortiz was offered approximately $22,654.  Barliza-Lopez and Silva-Ortiz each received upfront compensation of roughly $3,500.

On or about October 10, 2018, the four men headed to the Dominican Republic on the go-fast vessel.  Approximately 165 nautical miles south of Cabo Beata, Dominican Republic, the vessel was intercepted by the United States Coast

2

Guard ("Coast Guard"). Before the Coast Guard boarded their vessel, the four men threw a number of bales of cocaine, as well as Silva-Ortiz's pistol, overboard. The Coast Guard boarded the vessel, arrested the four men, retrieved some of the overboard contraband, and confiscated a total of thirty-two bales of cocaine, weighing over 1,194.4 kilograms.[1] Silva-Ortiz's pistol, however, was not retrieved.

On October 16, 2018, a grand jury returned a two-count indictment against the four men charging the defendants with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) (Count1), and with aiding and abetting the possession of cocaine aboard such a vessel, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (Count 2). The maximum sentence for these offenses is life imprisonment. *See* § 960(b)(1)(B)(ii).

Silva-Ortiz cooperated with federal agents with the hope that it would lead to a sentence reduction. During his post-*Miranda* interview and safety-valve debrief,[2]

---

[1] The presentence investigation report indicated that 1,194.4 kilograms of cocaine were recovered, but during Silva-Ortiz's plea hearing, the government stated that 1,236 kilograms were recovered.

[2] A defendant may obtain safety-valve relief, where the district court may disregard a statutory minimum sentence, when he meets the criteria specified in 18 U.S.C. § 3553(f). A defendant who possesses a firearm in connection with an offense, however, is not eligible for safety-valve relief. § 3553(f)(2).

Silva-Ortiz explained his role in the drug trafficking venture and admitted that he possessed a firearm while aboard the vessel.

Barliza-Lopez also cooperated with the government and later pleaded guilty to Count Two and was sentenced to 135-months imprisonment. Epieyu pleaded guilty to both counts and was sentenced to seventy-two-months imprisonment. Pushaina pleaded guilty to Count Two and was also sentenced to seventy-two-months imprisonment. None of the co-defendants received a sentence enhancement for possession of a firearm. Silva-Ortiz pleaded guilty to both counts but during his plea hearing, he did not admit to possessing a firearm.

Because the Coast Guard seized over 450 kilograms of cocaine, Silva-Ortiz's presentence investigation report recommended a base offense level of thirty-eight, with a two-level enhancement for possession of a firearm and a three-level reduction for his acceptance of responsibility, making the total offense level thirty-seven. *See* U.S.S.G. §§ 2D1.1, 3E1.1. With a total offense level of thirty-seven and a criminal history category of I, Silva-Ortiz's guideline range was 210 to 262 months imprisonment. *See* U.S.S.G. Sentencing Table, ch. 5, pt. A.

Silva-Ortiz objected to the two-level enhancement for possession of a firearm. During his sentencing hearing, Silva-Ortiz stated that he pleaded guilty only to the offenses charged in the indictment, but not to possession of a firearm and therefore the government was required to prove that he possessed a firearm. At the sentencing

hearing, the government offered the testimony of Special Agent Ivan Garcia to prove that Silva-Ortiz possessed a firearm.  Special Agent Garcia testified that Silva-Ortiz, during his post-*Miranda* interview and safety-valve debrief, admitted to the firearm possession as part of his role as the load guard.  Special Agent Garcia also testified that Silva-Ortiz, hoping that his cooperation would lead to a sentence reduction, was candid and truthful during his conversations with federal agents.  Following Special Agent Garcia's testimony, defense counsel conceded that the government met its burden in proving possession of firearm by Silva-Ortiz.

Acknowledging that his sentence could not go below 120-months, Silva-Ortiz argued that based on his candor with federal agents and the lower sentences of his co-defendants, he should receive a sentence of 120-months imprisonment.  Silva-Ortiz further argued that he would not be disappointed if his sentence matched Barliza-Lopez's sentence of 135-months imprisonment.  Silva-Ortiz also noted that he only received his upfront compensation of roughly $3,500, and not his offered $22,654, because he did not deliver the bales of cocaine to the Dominican Republic.  Barliza-Lopez similarly received roughly $3,500.

The government agreed that Silva-Ortiz was candid but nonetheless stated that it did not believe a sentence "out of line" with Barliza-Lopez's would be inappropriate given Silva-Ortiz's background as a former Colombian National Police officer who agreed to serve as a load guard and who was offered significantly

more compensation than the other co-defendants.  The district court overruled Silva-Ortiz's objection to the two-level increase for possessing the firearm.  The district court reasoned that a sentence greater than Barliza-Lopez's sentence was appropriate because Silva-Ortiz was more responsible than Barliza-Lopez as Silva-Ortiz was specifically hired to serve as the load guard to protect the drugs and was given a firearm to accomplish this job.  The district court further reasoned that Silva-Ortiz was offered more compensation for his role in the venture than the other defendants.

Nevertheless, while finding that Silva-Ortiz was more responsible than his co-defendants, the district court did not believe that a sentence within the applicable guideline range was necessary.  In making this determination, the district considered Silva-Ortiz's candor, stating that "you got to give him credit because he's the guy that told [the government] on two occasions that . . . he had the firearm, and about what he was going to be paid, and [he has] been very up front."  The district court also acknowledged that Silva-Ortiz's candor disqualified him for a potential safety-valve reduction.  The district court reasoned that it would "fashion a sentence that's higher than what the captain received but certainly less than the guideline range."

The district court reduced Silva-Ortiz's total offense level to thirty-four with a criminal history category I and sentenced him to 151-months imprisonment with five years of supervised release.  At the conclusion of the sentencing hearing, the district court stated that: "The sentence that I have imposed I think is a sentence

6

that's sufficient but not greater than necessary.  I think it's also one that avoids disparity in sentencing, and that's the reason I have varied downward."  This timely appeal ensured.

## II.    STANDARD OF REVIEW

"We review the substantive reasonableness of a sentence for abuse of discretion."  *United States v. Kirby*, 938 F.3d 1254, 1257 (11th Cir. 2019).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant [18 U.S.C. § 3553(a) sentencing] factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)).

## III.    ANALYSIS

Sentences must be procedurally and substantively reasonable.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  Because Silva-Ortiz does not challenge the procedural reasonableness of his sentence, the only issue before us is whether the sentence is substantively reasonable.  "The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question."  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  The weight given to any

7

§ 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). "Pursuant to § 3553(a), the sentencing 'court shall impose a sentence sufficient, but not greater than necessary, to'. . . promot[e] respect for the law, deter[] criminal conduct, and protect[] the public from further crimes of the defendant." *Gonzalez*, 550 F.3d at 1324 (quoting § 3553(a)(2)). The § 3553(a) factors include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

Silva-Ortiz argues that his sentence is substantively unreasonable because it is greater than necessary to protect the public and to further the goals of sentencing. He advances three arguments on appeal. First, he argues that his sentence was substantively unreasonable because the district court disparately sentenced his co-defendants. *See* § 3553(a)(6). Silva-Ortiz contends that he is similarly situated to Barliza-Lopez and should receive a comparable sentence. Silva-Ortiz contends that both he and Barliza-Lopez "had similar backgrounds, both entered pleas of guilty, both cooperated with law enforcement, and both received a similar amount of

8

money[, roughly $3,500,] for their involvement in the offense." Because of their similarities, Silva-Ortiz argues that his 151-month sentence was too disparate.

Second, Silva-Ortiz argues that the district court did not properly weigh his candor and truthfulness in cooperating with federal agents. Silva-Ortiz notes that he received the sentence enhancement for possession of a firearm because he was candid with federal agents and admitted to the possession of the firearm. In so doing, Silva-Ortiz contends, he disqualified himself for safety-valve relief.

Lastly, Silva-Ortiz argues that the district court did not properly weigh the government's statements regarding his sentence. According to Silva-Ortiz, "the government did not argue against a sentence of 135-months" and, "[i]n fact, the government conceded that a similar sentence to that imposed on Mr. Barliza-Lopez would be appropriate."

As a general matter, we note the wide discretion afforded to the district court. "It is abundantly clear that the district courts have institutional advantages in applying and weighing § 3553(a)'s factors in individual cases." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). "In the face of this discretion, it is only the rare sentence that will be substantively unreasonable." *Id.*

Turning to Silva-Ortiz's first argument, when considering a claim of sentence disparity, we first consider whether the defendant is similarly situated to the defendants to whom he compares himself. *See United States v. Dupervel*, 777 F.3d

1324, 1338 (11th Cir. 2015). When evaluating alleged disparities, we do not focus only on the crime of conviction and the total length of sentence. *See United States v. Moran*, 778 F.3d 942, 983 (11th Cir. 2015). While § 3553(a)(6) states that district courts should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," Silva-Ortiz is not similarly situated to his co-defendants. As the district court correctly determined, Silva-Ortiz's conduct differed from that of his co-defendants. Unlike Barliza-Lopez, Pushaina, and Epieyu, Silva-Ortiz was specifically hired by the South American drug trafficking venture to protect the bales of cocaine and possess the firearm, and was accordingly offered more compensation for his efforts. While there are some overarching similarities, Silva-Ortiz's role in the drug trafficking venture, as well as his culpability, differed from that of his co-defendants and warranted a higher sentence. *See United States v. Cabezas-Montano*, 949 F.3d 567, 612 (11th Cir. 2020) (holding that a captain of a vessel containing drugs and a drug smuggler were not similarly situated and warranted disparate sentences); *United States v. Bergman*, 852 F.3d 1046, 1071 (11th Cir. 2017) (holding that criminal defendant who was more involved in a Medicare fraud scheme was more culpable than his co-defendant); *Moran*, 778 F.3d at 983 (same); *see also United States v. McNair*, 605 F.3d 1152, 1231–32 (11th Cir. 2010) (explaining the differences between two co-defendants that warranted disparate sentences).

10

We also find Silva-Ortiz's second argument similarly unavailing. Although Silva-Ortiz contends that the district court did not properly consider his candor and truthfulness, the record suggests otherwise. During the sentencing hearing, the district court gave him "credit" for admitting to the firearm possession. This credit contributed to the district court's conclusion that the guideline sentence of 210 to 262 months imprisonment was not "necessary in order to provide proper punishment here." Accordingly, the district court sentenced Silva-Ortiz to 151 months imprisonment with five years of supervised release, which is below the statutory maximum sentence of life imprisonment. *See* 21 U.S.C. § 960(b)(1)(B)(ii). "A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

We are similarly not persuaded by Silva-Ortiz's final argument. Silva-Ortiz contends that the government did not object to his proposed lower sentence and even conceded that a sentence of 135-months imprisonment would be appropriate. Silva-Ortiz appears to reference the following statement that the government made during the sentencing hearing:

> I have no issue with . . . however the Court wants to fashion a reasonable sentence here . . . whatever the Court deems appropriate. I mean, it doesn't seem to me that a sentence that's out of line with Mr. Barliza-Lopez's would be inappropriate. I mean, they—they're on track with each other being far superior to the two mariners who really were de minimis roles by comparison, not in a legal sense but in a sort of more

11

practical sense. . . . this will be one of the stranger boat cases I've seen because I've not seen [a] former police officer serving as a load guard before . . . .

As the statement indicates, the government stated that a sentence greater than Barliza-Lopez's would not be inappropriate. But even if the government made a concession regarding sentencing, which the record does not support, a sentence does not automatically become unreasonable when a district court rejects the government's sentencing recommendation. *E.g.*, *United States v. Valnor*, 451 F.3d 744, 746, 751–52 (11th Cir. 2006) (affirming the district court's sentencing decision as reasonable, which rejected a joint sentence recommendation by the government and defense to impose a sentence within the advisory sentencing guideline range).

## IV.    CONCLUSION

Because the record evidence shows that the district court considered and weighed the 18 U.S.C. § 3553(a) factors, we find the district court's sentence substantively reasonable and affirm the sentence.

**AFFIRMED.**