[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-13898

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TREVOR AINES,
a.k.a. Sticks,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:18-cr-00260-RSB-CLR-7

_____

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and ALTMAN,[*] District Judge.

PER CURIAM:

Trevor Aines appeals his 280-month sentence as procedurally and substantively unreasonable. Under a plea agreement with the Government, Aines pled guilty to conspiracy to possess with intent to distribute, and to distribute, 5 grams or more of methamphetamine and possession of a firearm by a felon. Given Aines's criminal history and offense level, the Sentencing Guidelines yielded a range of 168 to 210 months in custody. The district judge varied upward and sentenced Aines to 280 months in custody. Aines argues that this sentence is procedurally unreasonable because, according to Aines, the court made and relied on improper factual findings. In addition, Aines contends that the sentence is substantively unreasonable. For the reasons that follow, we affirm the district court's sentence.

## I.     Background

Trevor Aines was a member of the Ghost Face Gangsters ("GFG"), described by the Presentence Investigation Report ("PSI") as a "traditional white supremacy gang originating in

---

[*] The Honorable Roy Altman, United States District Judge for the Southern District of Florida, sitting by designation.

Georgia prisons." In 2015, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") initiated an investigation of GFG.

Unrelatedly, on July 1, 2018, the Savannah Police conducted a traffic stop on a vehicle Aines was driving. The officers discovered Aines had an active contempt-of-court warrant. When they directed Aines to exit the vehicle, Aines fled on foot and then fought with officers when they tried to arrest him. A search of the vehicle yielded a Crown Royal bag that contained 38 small bags and 11 individual plastic wraps; a black digital scale; multiple pieces of gold jewelry; a clear Ziploc bag of methamphetamine (2 grams); a sawed-off 12-gauge shotgun loaded with 5 rounds of ammunition; a knife; multiple hypodermic needles; multiple .38 caliber rounds of ammunition; and a .38 special Smith and Wesson revolver. Both firearms had been reported stolen.

Meanwhile, ATF's investigation culminated in a Southern District of Georgia grand jury's return of an 83-count indictment against Trevor Aines and 42 codefendants. Aines was named in Counts 1, 72, 73, 74, and 75 of the indictment, which related in part to the events that occurred on July 1, 2018.

Eventually, Aines pled guilty to the lesser-included offense of Count 1 (conspiracy to possess with intent to distribute, and to distribute, 5 grams or more of methamphetamine) and to Count 74 (possession of a firearm by a felon) in exchange for the dismissal of the other charges against him.

The PSI concluded that Aines's total offense level was a 31 because the base offense level was a 30, plus two points for use of a firearm and two points for use of violence, minus two points for acceptance of responsibility and one point for assisting authorities. In addition, Aines had a criminal-history category of V. This resulted in a guideline sentence range of 168 to 210 months in custody. The probation officer recommended a sentence of 210 months as to Count 1 and 120 months as to Count 74, to be served concurrently. Aines's counsel filed objections to the PSI, and the government filed a memorandum asking the court to sentence Aines above the guideline-range maximum.

At the sentencing hearing, defense counsel withdrew all objections to the PSI except to Paragraph 15, which stated,

> 15.    Maurice Graham (codefendant) submitted to an interview with agents on September 17, 2018. Graham reported that he had watched a video of Helen Giffen being sexually assaulted by **Trevor Aines** and other GFG members. Graham asserted that he viewed a portion of the video on Devon Aines' [Trevor Aines's brother and a codefendant] laptop computer sometime after the assault occurred. In the video, **Trevor Aines** put a gun in Giffen's mouth as Giffen cried.

Aines "authorized [his counsel] to be very specific that he object[ed] to any indication that he sexually assaulted or raped anyone." The court adopted the unobjected-to factual statements and

advisory guidelines in the PSI and reserved ruling on the objection to Paragraph 15 until after testimony. But the court acknowledged that the information contained in Paragraph 15 did not affect the guideline range.

The court then heard testimony from government witnesses Brianna White, Reannon Warnock, Helen Giffen, and Daniel Duane Jeffers. White testified that she used meth with Aines. She recalled a particular instance in which she was in a hotel room with Aines and Aines believed he was missing drugs. After searching his car and the hotel room, Aines forced White to strip naked so he could verify she had not stolen the drugs. Then, Aines forced White to play "Russian Roulette." Specifically, the testimony was as follows:

> Q: And he put some bullets back in [the gun], and then he made you open your mouth. And then he stuck the gun in your mouth?
>
> A: Yes.
>
> Q: Did he pull the trigger?
>
> A: Yes.

Warnock testified that White called her crying during this incident. She eventually helped retrieve White from the situation. White was visibly upset and shaken.

Giffen testified that she also had an encounter with Aines in a hotel room.[1] She explained that her brother "left her" with Aines to repay a drug debt he owed to Aines. Aines and Giffen engaged in what Giffen characterized as consensual sex. They did meth together. Giffen explained that she did not feel free to leave the hotel room. As Giffen recalled, people were "in and out [of the hotel room] all day" doing drugs. Giffen described herself as nodding off and falling asleep, which she found surprising because, in her experience, meth usually kept her awake. She testified she believed Aines had given her a drug to make her fall asleep.

At some point, Giffen stated, Aines pointed a gun at her head. Giffen accompanied Aines to deliver meth. She fell into unconsciousness, and when she awoke, she was sore from her waist down with multiple bruises all over her body. Later, Maurice Graham told Giffen that he had seen a video in which "they took advantage of you and they recorded it."[2] Giffen said she was scared of Aines and felt that she had to do whatever he asked of her. Nevertheless, Giffen recalled, Aines would leave the hotel room for

---

[1] This was apparently a separate hotel stay than the one about which White testified. The PSI notes that Giffen's event occurred "while at a Days Inn hotel in May 2018," while Source of Information 27 (who is apparently White) stated that the Russian Roulette incident occurred "during April or May of 2018" in a hotel room "at a Best Western."

[2] The court overruled defense counsel's hearsay objection to this testimony after finding that the testimony was reliable. *See United States v. Magluta*, 418 F.3d 1166, 1184 (11th Cir. 2005) ("[I]n sentencing, a district court can consider hearsay . . . so long as there are sufficient indicia of reliability.").

spans of hours and maybe days.  Because she was high on meth, she did not know how many days she was in the hotel room.

The government offered into evidence photographs of Giffen's bruising.  Giffen did not testify specifically that she believed Aines had sexually assaulted her.

Finally, Jeffers, an unindicted codefendant, testified that when he was coming into the courthouse that very day, he passed Aines and Aines called him a snitch.

After the evidence was presented the government argued for an upward variance from the guideline range.  In the course of that argument, the government stated that Aines's acts of violence included "putting a gun in a person's mouth and playing Russian Roulette.  They include holding people against their will where sexual abuse took place."  The government also asserted,

> He then gets two points for using violence in this case.  Two points.  I would submit that putting a gun in someone's mouth and playing Russian Roulette and making their life flash before their eyes, not knowing whether they're going to live or die, being held against their will, is worth more than a point. Engaging or allowing others to engage in a gang rape, or a rape, that is videotaped and holding someone against their will at gunpoint is worth more than a point.  Two points clearly under-represents the true violence that was perpetrated by this defendant.

In response, defense counsel pointed out that no evidence showed that Aines had participated in a gang rape.

The court then ruled on the objection to Paragraph 15:

Regarding the Paragraph 15, I overrule the objection in part and sustain the objection in part. This is what the correct reading of Paragraph 15 should be: "Maurice Graham submitted to an interview with agents on September 19, 2018. Graham reported that he'd watched a video of Helen Giffen being sexually assaulted by other GFG members. Graham asserted that he viewed a portion of the video on Devon Aines's laptop computer sometime after the assault occurred. In the video Trevor Aines put a gun in Giffen's mouth as Giffen cried." That's how it will read.

After Aines made a personal statement to the court in which he again stressed that he was not involved in a sexual assault, the court pronounced the sentence. It varied upward from the guideline range and sentenced Aines to custody for a total term of 280 months for Count 1 and 120 months for Count 74, to be served concurrently. The court gave four reasons for varying upward. First, it stated that the ascertainable amount of drugs described in the PSI underrepresented Aines's criminal drug dealing. Next, the court found that the significant violence that Aines exhibited in furtherance of the drug conspiracy warranted an upward variance. With regard to this factor, the court explained,

I don't need to emphasize any more than has already been emphasized [in] the testimony I heard today. But suffice it to say putting these females through what you put them through is abhorrent, and it deserves far more than a two-point increase in your offense level. And make no mistake, every time you flew off the handle it's because you thought somebody stole your drugs. Not every time, but several times. So, again, it's related to the conduct itself.

Next, the court found that Aines's criminal-history category did not adequately represent the type of criminal conduct Aines had been engaged in because of the types of convictions that Aines had gathered in a very short period. The court felt that Aines had previously been given "wake-up calls" in the form of serious convictions and that Aines had never changed his ways. Last, the court varied upward because Aines had called Jeffers a snitch to his face that very day, in an attempt to intimidate Jeffers, which, according to the court, displayed that Aines still had no remorse.

The court summarized that it was varying upward primarily in consideration of 18 U.S.C. § 3553(a)(2)(C): "But particularly here, it's a need to protect the public. Folks who testified today aren't the only ones that have been terrorized by your conduct and victimized by your conduct. Hopefully, they'll be the last. This sentence is designed to protect the public."

In the judgment and statement of reasons for the sentence, the court checked the box that it adopted the PSI with the following

change: "The Court finds that Paragraph 15 incorrectly summarizes an interview with a cooperating codefendant. The Court holds that Graham did not specifically state that he observed Trevor Aines sexually assaulting Helen Giffen. Accordingly, the second sentence of Paragraph 15 should read: 'Graham reported that he had watched a video of Helen Giffen being sexually assaulted by other GFG members.'" The Court also explained further its reasoning for the upward variance:

> The Court finds that the offense level for the defendant is largely based on the ascertainable amount of drugs. It is the belief of the Court that the amount attributed grossly underrepresents the quantity of drugs that the defendant was involved in distributing. Further, the level of violence displayed by the defendant is not adequately represented in a two-level increase in offense level. The defendant brandished a firearm numerous times to continue to create a climate of fear to further the drug conspiracy and gang activity. The Court finds that the defendant has a history of serious felony convictions that are not adequately represented by a Criminal History Category V. Further, the defendant calling a cooperating unindicted codefendant "a snitch" outside of the courtroom on the day of sentencing shows the defendant has not truly accepted responsibility for his actions and continues to try to use intimidation and fear. A

sentence significantly above the guideline range has been imposed mainly to protect the public from the violence that the defendant displays.

The same district judge also sentenced Aines's codefendants. According to Aines's brief, and not disputed by the government, of the other codefendants, one received a sentence of 235 months, two sentences of 210 months each, and the remaining codefendants each received a sentence under 200 months (with 21 codefendants receiving less than 100 months).

The plea agreement preserved Aines's right to appeal if the court varied upward from the guideline range, and Aines timely filed his notice of appeal.

He argues on appeal that, in varying upward, the district judge improperly relied on the sexual-assault allegation and on the allegedly erroneous factual finding that Aines had "a large amount of drugs" despite testimonial evidence to the contrary. Aines asserts that the cumulative effect of these errors is that Aines ended up with a significantly higher sentence than his codefendants, and that is substantively unreasonable.

## II.    Legal Standard

We review a criminal sentence for procedural and substantive reasonableness under an abuse-of-discretion standard. *United States v. Villarreal*, 613 F.3d 1344, 1357 (11th Cir. 2010). Under this standard, "[a] district court's underlying legal conclusions are reviewed de novo and its factual findings for clear error." *United*

*States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293, 1300 (11th Cir. 2019).

## III.    Discussion

### A.    Procedural Unreasonableness

Aines argues that the district court based its decision to impose a 70-month above-guideline sentence on the alleged sexual assault and the court's finding that Aines dealt "a large amount of drugs." He contends that both were improper considerations, and as a result, his sentence is procedurally unreasonable.

A sentence is procedurally unreasonable if a district court commits an error "such as failing to . . . adequately explain the chosen sentence . . . ." *Gall v. United States*, 552 U.S. 38, 51 (2007). Section 3553(c) requires that "[t]he sentencing judge . . . set forth [sufficient reasoning] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

### 1.    *The Sexual Assault*

Aines makes three arguments for why consideration of the sexual-assault allegation was erroneous. First, he contends that the court failed to resolve the factual dispute about the sexual assault. Next, according to Aines, consideration of the sexual assault was improper because, even if the court resolved the dispute against Aines, the assault was not related to the charged offenses. Last,

Aines urges, it was improper to rely on the sexual assault because Aines did not get to present an insanity defense to the offense.

We are not persuaded.  First, as a matter of fact, the record does not support Aines's assertion that the court relied on the sexual-assault allegation when it chose the sentence.  Second, even assuming the court did sentence Aines based in part on the sexual-assault allegation without resolving the factual dispute, Aines invited the error by agreeing to the court's resolution of his objection to Paragraph 15.  Third, again assuming the court sentenced Aines in part based on the sexual-assault allegation without resolving the factual dispute, Aines's argument that the court may not consider uncharged offenses that are not relevant to the charged offense is unavailing because it relates to upward *departures*, not upward *variances*.  Last, Aines had notice that the sexual-assault allegation might come up at the sentencing hearing because the PSI included it and the government filed a motion requesting an upward variance.  As a result, Aines had the opportunity to present an insanity defense to the allegation if he so desired.

We explain our reasoning in more depth below.

*First*, the district court did not, in fact, rely on the allegation that Aines was involved in a gang rape of Giffen.  According to Aines, the district court's statement during the sentencing hearing (noted below) amounts to "the court plainly stat[ing] that it put significant weight on the sexual-assault allegations in imposing an above-Guidelines sentence":

> I don't need to emphasize any more than has already been emphasized [in] the testimony I heard today. But suffice it to say putting these females through what you put them through is abhorrent, and it deserves far more than a two-point increase in your offense level.  And make no mistake, every time you flew off the handle it's because you thought somebody stole your drugs.  Not every time, but several times.  So, again, it's related to the conduct itself.

But this statement, taken in context, reflects instead that the court was referring to the extensive evidence of gun violence on Aines's part.  This is evident for a few reasons.

For starters, the court referred to Aines putting "females" (plural) through something abhorrent.  Only Giffen alleged she experienced sexual assault.  Both women experienced gun violence—White testified that Aines forced her to play Russian Roulette and the PSI reflected that Aines put a gun in Giffen's mouth—so the court's reference to what Aines put multiple "females" through makes sense only if the court was referring to Aines's violence using guns, not the sexual-assault allegation.

The court also mentioned Aines's "flying off the handle" when he thought someone stole his drugs.  Only White (not Giffen, the sexual-assault victim) testified that Aines's misperception that she had stolen his meth resulted in the violence (forced Russian Roulette) against her.

And in the judgment and explanation of sentence, concerning the upward variance based on violence, the court wrote, "Further, the level of violence displayed by the defendant is not adequately represented in a two-level increase in offense level. The defendant *brandished a firearm* numerous times to continue to create a climate of fear to further the drug conspiracy and gang activity." (emphasis added). Again, the violence the court used to justify the upward variance was gun violence, like brandishing a firearm. The court did not reference the sexual assault.

Taking the written explanation of the sentence along with the court's statements at the sentencing hearing, the record simply does not reflect that the court relied on the sexual-assault allegation when it chose to vary upward from the guideline range.

*Second*, even assuming *arguendo* that the court did rely on the sexual-assault allegation—and assuming that hypothetical reliance was error—Aines invited the error by accepting the court's resolution of his objection to Paragraph 15.

Under Federal Rule of Criminal Procedure 32, if a factual dispute arises concerning any part of the PSI, the sentencing court must rule on the dispute or determine that a ruling is unnecessary because the ruling will not affect sentencing or be considered during sentencing. Fed. R. Crim. P. 32(i)(3)(b); *United States v. Foley*, 508 F.3d 627, 634 (11th Cir. 2007). According to Aines, the district court failed to do either with respect to the sexual-assault allegation, so his sentence is procedurally unreasonable. Aines is mistaken.

Before the court took testimony at the sentencing hearing, the government proposed the change to Paragraph 15 that the court eventually adopted—that Graham told the interviewers that he saw "other GFG members"—not Aines—sexually assault Giffen.  The court asked defense counsel whether the amendment resolved the objection, and she responded: "According to my client, in conferring with him, he says that based on what the government just presented to the Court, it clarifies it for him."

Then, when the district court amended Paragraph 15, the following exchange occurred:

> Defense counsel: That's how it reads, and we understand and added that we knew that Maurice Graham was going – that's based on what Maurice Graham believes that he saw.  And we're saying that – or the objection was that it was hearsay because we don't even have the video, but we do not deny or object to that that's what Maurice Graham told the interviewer.
>
> The Court: Okay.  Well, that's my ruling, what I just stated –
>
> Defense counsel: Okay.
>
> The Court: -- regarding Paragraph 15.
>
> Defense counsel:  All right.
>
> The Court:  All right?

Defense counsel: Yes.

We need not decide whether it was error for the court not to resolve the factual dispute of whether Aines himself sexually assaulted Giffen because, even assuming it was, Aines invited the error.

The invited-error doctrine "is implicated when a party induces or invites the district court into making an error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (internal quotation marks omitted). Such invited error is not reviewable on appeal. *Id.* "Thus, if a party waives a procedural right or agrees to the admissibility of certain evidence, he cannot later complain that any resulting error is reversible." *Id.*

Here, Aines's counsel objected to Paragraph 15. After conferring with Aines, she agreed that the court's revision to Paragraph 15 resolved the objection. Because Aines agreed to the Court's resolution of his objection, he cannot argue otherwise on appeal. While Aines did say he didn't want any implication in the PSI that he sexually assaulted someone, he and his counsel agreed that the court's revision of Paragraph 15 resolved the objection. And Aines doesn't argue on appeal anything about the hearsay objection. So this argument fails.[3]

---

[3] Aines argues that the court's failure to make a factual finding "highlights an open question in this Circuit regarding the standard of proof for uncharged offenses that are unrelated to the crimes of conviction." According to Aines, this Court has not addressed whether the government has to prove uncharged

*Third*, again assuming *arguendo* that the district court considered that Aines had participated himself in the alleged gang rape of Giffen, Aines argues that was inappropriate because the allegation was not relevant to the charged offenses.  In support of his contention that an uncharged offense must be relevant to the charged offense for the court to be able to consider it, Aines first cites U.S.S.G. § 5K2.21.  That section of the Sentencing Guidelines states,

> The court may *depart* upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

(emphasis added).

According to Aines, because the sexual assault was not dismissed and was not "not pursued" as part of the plea agreement, it

---

offenses beyond a reasonable doubt or by a preponderance of evidence for the court to consider them in sentencing.  But in *United States v. Overstreet*, 713 F.3d 627, 637 (11th Cir. 2013), this Court held that it was not error for the sentencing court to find that the defendant murdered his wife when the government proved it by a preponderance of evidence.  So, "the district court was still entitled to consider the murder in deciding whether to vary outside the guideline range."  *Id.*  The standard of proof required, then, is not an open question in this Court.

was improper for the district court to rely on it when deciding Aines's sentence.

This argument misses the mark. Section 5K2.21 relates to an upward *departure*, not an upward variance. By the district court's own description, the district court did not depart upward; it varied upward. So § 5K2.21 does not apply, and neither do the cases Aines cites for the same proposition.

He first cites *United States v. Ellis*, 419 F.3d 1189 (11th Cir. 2005). *Ellis* is a departure case that was decided shortly after *United States v. Booker*, 543 U.S. 220 (2005). In *Booker*, the Supreme Court held that the mandatory nature of the Sentencing Guidelines violated the Sixth Amendment, so the guidelines could be only advisory. In *Ellis*, we held that the district court erred by departing upward under a sentencing guideline that didn't apply. We then acknowledged that, on remand, the district court couldn't depart for those reasons, but under *Booker*, could instead take them into account when tailoring the sentence, including in varying upward. *Id.* at 1193.

Next, Aines cites *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007). In addition to being out-of-circuit precedent, this case undermines Aines's argument. The Tenth Circuit acknowledged that in a drug case, the district court could not depart upward based on uncharged allegations of rape of a minor. *Id.* at 1256–57. But the court went on to explain that, "after *Booker*, sentencing courts have some latitude to consider evidence and conduct beyond what would have been permissible under [various Sentencing Guidelines

provisions] in the course of determining whether the defendant's criminal history adequately reflects his dangerousness to the community." *Id.* at 1259. The court did vacate the sentence, but it was because the district court had placed so much emphasis on the rape allegation that the court imposed the sentence based on it rather than on the drug charge. *Id.* at 1262. Aines makes no such argument here.

Aines also cites *United States v. DiDomenico*, 78 F.3d 294, 305 (7th Cir. 1996). This is an out-of-circuit, pre-*Booker* case that evaluated an upward departure. So again, it is not relevant here, where we are dealing with a variance.

Perhaps sensing the problem with his reliance on the departure provision, Aines also urges that nothing "in § 3553(a) permit[ted] the district court to impose an above-Guidelines sentence due to the uncharged and unrelated sexual assault." In support of this argument, Aines points to various factors listed in 18 U.S.C. § 3553(a) that focus on "the offense." For example, (a)(1) directs the sentencing court to consider "the nature and circumstances *of the offense* and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1) (emphasis added). And (a)(2)(A) says the court should consider "the need for the sentence imposed … to reflect the seriousness *of the offense* . . . ." *Id.* § 3553(a)(2)(A) (emphasis added). According to Aines, then, "[n]one of the factors enumerated in § 3553(a) instructs sentencing courts to look at conduct that is neither part of the charged offense nor part of the defendant's criminal history."

But the sentencing court is not required to put blinders on and consider only the charged offense in isolation. Nor must extraneous conduct be connected to the charged offense to be considered. *See Overstreet*, 713 F.3d at 637 (finding that district court was entitled to consider that defendant murdered his wife after government proved it by a preponderance of evidence, even though that conduct was not related to the charged offense). The limit on the court's consideration of extraneous conduct comes not from its relevance (or lack of it) to the charged offenses, but from its relevance to the sentencing factors in § 3553(a). Courts may consider uncharged conduct in constructing a sentence if doing so serves the purposes of one or more sentencing factors. *See id.*; *see also United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir. 2006) (after *Booker*, "courts may still consider relevant facts concerning a defendant's 'background, character, and conduct' when making sentencing calculations, even if those facts relate to acquitted conduct").

Here, even assuming the district court relied on the conclusion that Aines participated in the gang rape, it necessarily did so in its consideration of 18 U.S.C. § 3553(a)(2)(C)—the need for the sentence to protect the public from further crimes of the defendant. When the court pronounced the sentence, it stated in part, "But particularly here, it's a need to protect the public. Folks who testified today aren't the only ones that have been terrorized by your conduct and victimized by your conduct. Hopefully, they'll be the last. This sentence is designed to protect the public." Similarly, on

the judgment form, the court checked the box (in addition to others) showing that it based the variance on § 3553(a)(2)(C).  And in summarizing its reasons for the upward variance, the court stated in part, "A sentence significantly above the guideline range has been imposed mainly to protect the public from the violence that the defendant displays."  So even assuming the court was referring to the sexual assault when it mentioned "violence," then the court found that its consideration of Aines's alleged sexual assault of Giffen was appropriate to protect the public.  Aines does not challenge this finding.

*Fourth*, and again assuming *arguendo* that the court considered Aines's alleged sexual assault of Giffen, Aines complains that he was never afforded an opportunity to defend against the claim and Aines would have had a colorable insanity defense against it. The government responds that this contention is contradicted by the record.

The PSI does reflect that Aines had struggled with schizophrenia in the past.  It states in relevant part,

> 56.    The defendant reports that he hears voices that tell him that they love him and tell him not to hurt himself or anyone else.  He asserts he was placed on medication while in Chatham County Detention Center in 2017.  He reports he did not want to be on medication and stopped taking the medication.

57.    In 2018, the defendant's mother had him committed to Georgia Regional for paranoid delusions and hearing voices. The defendant was diagnosed with paranoid schizophrenia. Georgia Regional staff noted that the defendant refused to take medication, talked to himself, and stated that there was a devil in his home. The defendant reports that since his instant arrest, he's contemplated and attempted suicide and his been cutting his wrists in Chatham County Detention Center.

And at the sentencing hearing, in support of mitigation, Aines's counsel noted that Aines had been institutionalized for paranoid schizophrenia. Aines himself also highlighted his mental-health issues and told the court that he was "having very bad paranoid schizophrenic attacks" during the hotel incident with Giffen.

Aines was on notice that the sexual-assault allegation would come up at the hearing because it was included in the PSI. Indeed, he objected to it. Not only that, but the government filed a motion requesting an upward variance. If Aines wanted to refute the allegation of sexual assault with evidence of mental illness, he could have done so through witness testimony or other evidence. That Aines did not choose to present such evidence does not mean that he was denied the opportunity to do so.

For all these reasons, Aines's arguments based on the court's alleged consideration of the sexual-assault allegation fail.

### 2.    *The Amount of Drugs*

Unlike with the sexual assault, the trial court did, in fact, base the upward variance in part on its determination that Aines was dealing a large amount of drugs.  When the court pronounced the sentence, it stated in part,

> First of all, the ascertainable amount of drugs that were outlined in the presentence investigation report, while accurate, under-represent this defendant's criminal drug dealing. It's pretty clear when I look at the totality of this case, when I hear about the testimony I heard today about the prevalence of drugs, he was dealing a large amount of drugs and he was regularly dealing those drugs.

The judgment also relies on the drug quantity as a reason for varying upward:

> The Court finds that the offense level for the defendant is largely based on the ascertainable amount of drugs. It is the belief of the Court that the amount attributed grossly underrepresents the quantity of drugs that the defendant was involved in distributing.

Aines argues that this was error because no testimony at the sentencing hearing supported the conclusion that Aines dealt a large amount of drugs.  The government responds that, regardless of the specific witness testimony at the sentencing hearing, sufficient

evidence in the record supports this finding, and it cannot be considered "clear error."[4]

Aines is correct that, for the most part, the witnesses at the sentencing hearing did not offer testimony that would support a finding that Aines dealt a large amount of drugs. For example, on cross examination, Giffen agreed with defense counsel that she had previously told police that she saw Aines "with small quantities of meth." And when the court asked Giffen whether Aines was "distributing significant amounts of drugs," she replied, "I would sit in the car all the time. So I don't know what he did when he went inside these places, but I would guess so." She also stated that she did not know the quantities of drugs Aines dealt. White likewise testified that she did not know the amount of drugs that Aines dealt.

On the other hand, unobjected-to statements in the PSI could have led the court to find the charged amount of meth did not accurately represent Aines's drug dealing. The PSI attributed 99.225 grams of methamphetamine to Aines, under U.S.S.G. § 2D1.1. That amount was based on a single purchase of methamphetamine that Aines made with codefendant Jeffers. Although Aines initially objected to this amount of attributable drugs, he

---

[4] There is some dispute as to whether Aines preserved error with regard to this finding by the court, which would affect the standard of review ("clear error" vs. "plain error"). As explained below, there was no error under either standard, so we need not determine whether Aines preserved error.

withdrew that objection at sentencing. Before that happened, though, and in response to Aines's objection, the probation officer explained that the 99.225 grams was an "extremely conservative" estimate, given the "totality of the circumstances."

The district court adopted all factual statements to which there were no objections. Not objecting to statements in the PSI "renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). Here, the relevant unobjected-to statements in the PSI included the following:

(1) Aines purchased 5 or 6 ounces (99.225 grams under purity analysis) of methamphetamine on one occasion, setting the drug amount in the presentence report;

(2) text messages between codefendant David McCloskey and another individual indicate that Aines was selling methamphetamine for $300 per ounce and trying to undercut competitor prices;

(3) Aines was arrested with 2 grams of methamphetamine on him, along with numerous items indicative of drug trafficking, including a Crown Royal bag that contained 38 small bags and 11 individual plastic wraps, a black digital scale, multiple pieces of gold jewelry, a clear Ziploc bag with the methamphetamine in it, a sawed-off 12 gauge shotgun loaded with 5 rounds of ammunition (reported stolen), a knife, multiple hypodermic needles, multiple

.38 caliber rounds of ammunition, and a .38 special Smith and Wesson revolver (also reported stolen);

(4) Aines was missing 7 grams of methamphetamine in a hotel room in April 2019 and told the person he was with that he refused to take *another* loss (emphasis added);

(5) Aines served as a driver who traveled to Atlanta, Georgia to obtain methamphetamine and deliver it to another individual;

(6) Aines "put guns in multiple people's faces to threaten them to not buy methamphetamine from another source"; and

(7) Aines sold $10 to $20 quantities of methamphetamine every day for three weeks to a cooperating witness, who also observed Aines possess Ziploc bags full of methamphetamine.

These statements in the PSI provide sufficient support for the district court's conclusion about the amount of drugs involved. Indeed, Aines seems to realize this, as he argues instead that this information in the PSI is irrelevant because the court indicated it found that Aines dealt a large amount of drugs based on only testimony. This misrepresents the district court, which said it based the finding on "the totality of the case," including (but not limited to) the testimony.

In short, we cannot say that the district court erred in finding that the ascertainable amount of drugs for which Aines was convicted under-represented his drug dealing or in basing the upward variance, in part, on that finding.

## B.    Substantive Unreasonableness

Aines last argues that his sentence is substantively unreasonable because the cumulative effect of the court's errors resulted in a sentence longer than his codefendants' sentences. We first note that "where there is no error or only a single error, there can be no cumulative error." *United States v. House*, 684 F.3d 1173, 1210 (11th Cir. 2012). And here, as we have explained, there is no error.

But even on its own terms, we cannot say that Aines's sentence is substantively unreasonable. Aines's guideline range was 168 to 210 months. The court sentenced him to 280 months, 70 months more than the guidelines advised. This means Aines's sentence is 133% of the maximum guideline range sentence. A sentence outside the guideline range does not enjoy a presumption of reasonableness, but neither is it presumed unreasonable. *United States v. Irey*, 612 F.3d 1160, 1185 (11th Cir. 2010) (en banc).

When we review for substantive reasonableness, we consider "the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). A sentence can be substantively unreasonable if the district court does any of the following: (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors. *Irey*, 612 F.3d at 1189.

One factor for the sentencing court to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The government does not dispute Aines's contention, that, at least so far, Aines's sentence is the longest of all his codefendants. The next longest sentence of a codefendant is 235 months. But besides the arguments regarding the sexual assault and the amount of drugs (which have already been addressed), Aines doesn't offer any argument as to why his longer sentence is "unwarranted." See United States v. Williams, 526 F.3d 1312, 1324 (11th Cir. 2008) (defendant failed to demonstrate that her and a codefendant's situations were similar enough that disparity in sentencing was unwarranted).

And in the past, we have found similar or even more dramatic upward variances to be reasonable. See, e.g., United States v. Early, 686 F.3d 1219 (11th Cir. 2012) (upholding a 210-month sentence where the guideline range was only 78 to 97 months and the statutory maximum was 900 months); United States v. Mateos, 623 F.3d 1350, 1366 (11th Cir. 2010) (upholding a sentence equal to the statutory maximum, which was more than 8 years above the top of the guidelines range); United States v. Eldick, 443 F.3d 783, 786, 790 (11th Cir. 2006) (upholding a 180-month sentence, the statutory maximum, where the guideline range was 87 to 108 months); United States v. Shaw, 560 F.3d 1230, 1232, 1241 (11th Cir. 2009) (upholding a 120- month sentence representing a 224 percent upward variance from the maximum guideline sentence (the

guideline range was 30 to 37 months)); *United States v. Amedeo*, 487 F.3d 823, 828, 834 (11th Cir. 2007) (upholding a 120-month sentence representing a 161 percent upward variance (the guideline range was 37 to 46 months)); *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007) (upholding a 240-month sentence representing a 281 percent upward variance (guideline range of 51 to 63 months)).

In addition, a comparison of the sentence to the statutory maximum can be helpful in determining whether the sentence is reasonable. *See United States v. Valnor*, 451 F.3d 744, 751 (11th Cir. 2006). Here, the statutory maximum for Count 1 was 40 years. A sentence of 23 years and 4 months is "appreciably below the length of the statutory maximum," indicating reasonableness. *Id.*

In sum, we cannot say that the district court's decision to sentence Aines to 280 months in custody was substantively unreasonable.

## V.    Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**